LUELLA KOONS, PROSECUTRIX, v. BOARD OF COMMIS-
SIONERS OF THE CITY OF ATLANTIC CITY, DEFEND-
ANT.

Argued December 10, 1945—Decided June 14, 1946.

330

Before Justices DONGES, HEHER and COLIE.

For the prosecutrix, *Powell & Parker* (*Harold T. Parker* and *Robert W. Criscuolo,* of counsel).

For the defendant, *Leon Leonard* and *Chaim H. Sandler.*

The following submitted a joint brief as *amici curiæ:*

*John Lloyd, Jr.,* for the Atlantic City Hotel Association.

*Ralph Harcourt,* for the Atlantic City Planning and Improvement Association.

*Alfred T. Glenn, Jr.,* for the Atlantic City Chamber of Commerce.

*Vincent S. Haneman,* for the Atlantic City Restaurant Association.

*Thomas H. Munyan,* for The Committee for the Improvement of Atlantic City through the Sales Tax.

The opinion of the court was delivered by

HEHER, J. The question here is the constitutional sufficiency of chapter 156 of the Laws of 1945. *Pamph. L., p.* 544; *N. J. S. A.* 40:48–8.1. The writ brings up for review an ordinance of Atlantic City which levied a sales tax pursuant to the statute.

It is said that the act is special and local in contravention of article IV, section VII, paragraph 11 of the State Constitution, proscribing private, local or special laws regulating the internal affairs of towns and counties. The legislature thereby declared "an emergency * * * to exist in municipalities bordering upon the Atlantic Ocean which are seaside or summer resorts and which because of their size have a great fluctuation in the number of visitors," in consequence of the damage wrought by the hurricane of September 14th, 1944, the "continued erosion of beaches and the danger of hurricane

in the near future, all of which make it impossible for such municipalities to function normally as seaside or summer resorts during the next three fiscal years unless some additional revenue" be raised to provide "the facilities which attract visitors" to such resorts; and the power to levy a retail sales tax, subject to certain limitations and conditions, is expressed to be conferred upon "any city having a population in excess of fifty thousand inhabitants, which borders upon the Atlantic ocean and is a seaside or summer resort, and in which an emergency is" therein "declared to exist." The act expires of its own limitation on January 1st, 1948.

Atlantic City is the only seaside resort which falls into this statutory category; and it is urged that the classification is illusory, in that "population and form of municipal government bear no relationship either to the avowed purpose of the act or to the nature of the remedy it provides." The essence of the argument *contra* is that the class is delimited by a reasonable standard "predicated on size and the degree of the fluctuation in the visitor population," *i. e., "great* fluctuation of population," and the classification therefore rests upon differences that are real and substantial and germane to the object of the act, and, since there is an inclusion of all cities within the "emergency class," as so delimited, the constitutional requirement is met. In a word, it is said that the proofs reveal substantial differences between Atlantic City and the other seashore resorts—"differences which are due to, or related to, differences in their population"—which serve to place that municipality "in a class by itself" as regards the subject-matter of the challenged legislation, which, it is insisted, is "peculiarly adapted to" its "distinctive needs."

The statute is read as setting up "a standard compounded of several requisites:" and it is argued that, while "some of these requisites are common to all of the resorts named, many are peculiar to Atlantic City alone;" that "the proofs show that those requisites which are peculiar to Atlantic City alone are the reference to size, great fluctuation in visitor population and damage caused by the recent hurricane;" and that prosecutrix has failed to sustain the burden of proving that the resorts excluded from the operation of the act "possess

these qualities and qualifications in any degree even remotely comparable to Atlantic City." Again, it is urged that "the catastrophic proportions of hurricane damage suffered by Atlantic City alone coupled with its already high tax rate and staggering debt load served to create the emergency condition declared by and recognized in the act;" that "the mere fact that other resorts may have a high tax rate and heavy debt is not sufficient to qualify them for inclusion in the same class with Atlantic City," since the excluded municipalities "have failed to meet one or more of the requisites as laid down in the act;" and that Atlantic City "possesses distinctively individual characteristics entirely dissimilar from other resort cities," and is therefore "a proper subject of individual classification" for the purposes of the particular legislation, and hence the act is general in constitutional intendment.

We shall address ourselves, first, to a discussion of the pertinent legal principles.

Article I, paragraph 19, of the State Constitution accords recognition to the common-law division of municipalities into counties, cities, boroughs, towns, townships and villages. This classification is permissible under the constitution for the purposes of local government; and laws limited to any of such classes are general in the constitutional sense, even though there may be municipalities in one or more of the other classes which have the like characteristics and attributes, considered in relation to the subject-matter of the legislation. This view has long had general acceptance. But the law-making authority may subdivide the common-law municipalities into subordinate classes; and the validity of such legislative classification depends upon the existence of distinguishing qualities and attributes related to the subject-matter of the legislation. The characteristic constituting the basis of the classification must be reasonably appropriate to the object of the law. Unless it rests upon distinctions that are substantial and not merely illusory, the classification is wanting in the virtue of constitutional generality. The test is whether the statutory class has a logical and reasonable basis, free from artificiality and arbitrariness, embracing all and omitting none naturally falling into that category. Is the legis-

lation of such a character as that it is equally appropriate to all forming the statutory class, and is that class embracive of all in like situation and circumstances, and therefore natural members of the class? If, viewed in the light of the legislative design, the necessity and propriety of the classification reasonably appears, it is not within the constitutional interdict. *Wanser* v. *Hoos*, 60 *N. J. L.* 482, 525; *Hermann* v. *Guttenberg*, 63 *Id.* 616; *Boorum* v. *Connelly*, 66 *Id.* 197; *Lewis* v. *Jersey City*, 66 *Id.* 582; *Raymond* v. *Teaneck*, 118 *Id.* 109.

Ordinarily, the exclusions from the statutory class are determinative of the generality of the act in constitutional intendment. "A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes." *Budd* v. *Hancock*, 66 *N. J. L.* 133. And, in resolving the question, the substance and practical operation rather than the form of the statute control. *Alexander* v. *City of Elizabeth*, 56 *Id.* 71.

Thus, population forms a valid basis of classification in statutes relating to the structure and machinery of municipal government only "where population bears a reasonable relation to the necessities and proprieties of the various grades of municipal government." *Lewis* v. *Jersey City, supra.* In applying the general rule adverted to, Chief Justice Depue declared that the classification is illusive unless it is founded on "some characteristic or peculiarity plainly distinguishing the places included from those excluded and making the legislation fit and appropriate to those included and inappropriate to those which are omitted. It must embrace all and exclude none, whose condition and wants render such legislation equally appropriate to them as a class." And in *Lowthorp* v. *Trenton*, 61 *N. J. L.* 484; *affirmed*, 62 *Id.* 795, the Court of Errors and Appeals held that "population bears a reasonable relation to the subject-matter of the legislation * * * only when such legislation deals with the structure or machinery of municipal government. Classification on the

basis of population, for any other purpose than those mentioned, is illusive and unsubstantial, and consequently is within the constitutional prohibition."

Classification on the ratio of population "cannot be made the means of evading the constitutional interdict of local or special laws. The question whether any particular statute is local or special must be determined not upon its compliance with a legislative classification, but upon whether, having regard to the character of the legislation and the limitation upon it contained in the act, the statute is or is not a general law as defined by the courts." *Wanser* v. *Hoos, supra.* The question is whether "the provisions of the act are such as are germane to population." *Mortland* v. *Christian,* 52 *N. J. L.* 521. The case of *Foley* v. *Hoboken,* 61 *Id.* 478, distinguishes between legislation which affects the structure or machinery of local government and such as "operates upon the inhabitants or taxpayers in other respects;" and it was declared that "illusiveness results equally when a classification is created with a view of escaping the constitutional restriction and when one is adopted with a like result." The sufficiency of the classification depends upon the nature of the subject-matter of the law. The inquiry is whether it is based upon considerations and distinctions which reasonably serve to mold the class.

The statute under review plainly concerns more than the mere structure or machinery of local government. The legislation affects the citizen or taxpayer in other substantial respects. It inaugurates a radically new fiscal policy directly affecting most, if not all, of its inhabitants, not to mention those coming within its borders for entertainment and recreation. In *Lowthorp* v. *Trenton, supra,* the court of last resort held that the "purchase, construction and maintenance of school property by a municipality has no relation whatever to the governmental apparatus of such municipality, and classification on the basis of population for such a purpose is entirely without legal justification." In *Foley* v. *Hoboken, supra,* the ruling was that an act permitting cities of the second class to place the cost of repaving streets upon the general taxpayer to the relief of the abutting landowner, to

the extent of the special benefits derived, constituted merely a change of "existing policy," and did not "alter or affect the structure or machinery of government." Compare *Wanser* v. *Hoos, supra; Mortland* v. *Christian, supra.*

It results that the question of the constitutional generality of the statute in the case at hand is open to judicial examination; and we find it to be deficient on its face. The classification is unreal and illusive. The special grant of taxing power is confined to the Atlantic Ocean resort cities having a population exceeding fifty thousand inhabitants, and there is but one such. It was manifestly the legislative design to restrict this power to Atlantic City alone, for no other municipality can conceivably come within the class during the life of the act; and, while this circumstance is not necessarily conclusive, we are not aware of any reason, related to the object of the law, for the exclusion of seaside resort cities of less population which have likewise suffered great damage from the hurricane and beach erosion. The distinction is purely arbitrary. The professed aim of the statute is the local provision of "the facilities which attract visitors" to seaside resorts, and thus to render it possible for such municipalities to "function normally as seaside or summer resorts;" and a classification that limits this remedial measure to municipalities of the general class which "because of their size have a great fluctuation in the number of visitors" is patently insubstantial and illusive.

This class is not comprised of cities within a given population range reasonably-related to the purposes of the legislation, as in *Attorney-General* v. *McKelvey,* 78 *N. J. L.* 621, but rather the one seaside resort city (with none other in prospect or contemplation) whose population exceeds fifty thousand inhabitants, on the assumption that, due to its "size," there is a *great* fluctuation in the "number of visitors." Thus, the standard is the volume of the fluctuation of visitors, although the fluctuation ratio may be relatively as great or even greater in the smaller communities. Considering the purpose of the legislation, *i. e.,* the provision of entertainment and recreational facilities for the attraction of visitors, and thus the

restoration of "normal function" as seaside resorts, there is no substantial basis for differentiating between Atlantic City and the smaller localities similarly circumstanced. The subject-matter is essentially one for a general law; and the classification is obviously a contrivance designed to evade the constitutional prohibition. It bears no substantial relation to the need and the remedy constituting the subject-matter of the enactment. The size and number of inhabitants of a municipality of the general class are not necessarily decisive of the ratio of the fluctuation of population. And the volume of fluctuation as a standard is artificial and illusive. Such is not germane to the law. It is not a characteristic that naturally serves to place the larger municipality in a class by itself. Such a rule is not suitable alone to the class selected. Compare *Lowlhorp* v. *Trenton, supra; Foley* v. *Hoboken, supra.* In *Anderson* v. *Trenton, 42 Id.* 478, a statute authorizing cities of not less than twenty-five thousand inhabitants to issue bonds was condemned as creating an evasive classification; it was held that there was no natural connection between the number of inhabitants and the municipality's right to fund its floating debt.

While the determination of the facts on which the constitutional validity of a statute may depend is primarily a legislative function, both parties here have submitted evidence on the question of the existence of a factual basis for the challenged classification. Some of the essential facts thus established are properly the subject of judicial notice. All of the State's seaside resorts suffered heavy damage from the hurricane, and most of them, if not all, are constantly subject to beach erosion. In this latter respect, Long Branch has suffered much greater injury than Atlantic City. The normal population of Atlantic City is 64,094; Long Branch, 17,408; Asbury Park, 14,617; Ventnor, 7,905; Margate City, 3,266; Cape May, 2,583; and Brigantine, 403. All these municipalities have exceeded the legal debt limit of 7% of their respective assessed valuations. Their bonded indebtedness ranges from 12.45% for Long Branch to 136.81% for Brigantine. Atlantic City has a bonded indebtedness of 27.39% of its property valuations, while Asbury Park's is 42.07%.

Atlantic City's tax rate is 5.95, and Asbury Park's is 5.50. Atlantic City, Long Branch and Asbury Park are in the same general category as to percentage ratio of hurricane damage to tax ratables. The same is true as to beach erosion; indeed, as stated, Long Branch has sustained much greater injury in this regard than the others. The cost of repairing the hurricane damage to Atlantic City, and of the installations to correct and prevent beach erosion, was given as approximately $2,100,000. In the case of Asbury Park it was estimated at between $2,000,000 and $2,500,000; and Long Branch at $4,500,000. Atlantic City has 2.9 stores for each one hundred inhabitants; Long Branch, 2.1; and Asbury Park, 3.6. In Atlantic City there is an annual expenditure of $1,437 for each inhabitant; in Asbury Park, $1,169; and in Long Branch, $611. The nature of the facilities so damaged was essentially the same in Atlantic City, Asbury Park and Long Branch, i. e., boardwalks, convention halls and buildings used for the entertainment and recreation of visitors.

Thus, the particular statute was designed for the relief of but one municipality of a group similarly circumstanced, and therefore it is special and local in the constitutional sense. It has the vice of discrimination against members of a class to which the subject-matter of the legislation reasonably and naturally relates. It is designed to supply Atlantic City with the means of normal function as a seaside or summer resort, for the use and recreation of the general public as well as its own inhabitants, and to deny the same function to the smaller communities. There is no difference of substance between the class selected and the class excluded. This is particularly true of Long Branch and Asbury Park. They have the characteristics to which the object of the law relates. By force of an inherent limitation, the act arbitrarily excludes municipalities upon which, but for such limitation, it would operate. There is an artificial distinction between localities having a common status and need.

Much of defendant's brief, likewise that of the *amici curiæ*, is devoted to the proposition that prosecutrix does not have the status requisite to challenge the ordinance by *certiorari*. The point was made on the application for the writ, and was

overruled with leave to renew it upon the argument of the cause on the merits.

Prosecutrix is not the owner of real property in the municipality, and she has paid to it no personal property or mercantile tax; and the contention is made that she is not a taxpayer and has not sustained a special injury as distinguished from the injury to the general public, and therefore lacks the special interest entitling her to contest the ordinance. A line of cases is invoked of which the following are typical: *State, Gregory, Taylor et al., Pros.,* v. *Jersey City,* 34 *N. J. L.* 390; *Jersey City* v. *Traphagen,* 53 *Id.* 434; *Middleton* v. *Robbins,* 54 *Id.* 566; *Tallon* v. *Hoboken,* 60 *Id.* 212; *Paterson Chronicle Co.* v. *Paterson,* 66 *Id.* 129; *Rehill* v. *East Newark and Jersey City,* 73 *Id.* 220; 74 *Id.* 849; *Appley* v. *Bernards Township,* 128 *Id.* 195; *Simmons* v. *Mayor and Council of the Borough of Wenonah,* 6 *N. J. Mis. R.* 902.

But the status of prosecutrix is akin to that of a "taxpayer" as the term is known in the cited cases; and a taxpayer has the standing requisite to contest the illegal expenditure of public funds, on the theory of an indirect injury, even though the like injury is sustained by all other taxpayers. And, *a fortiori,* this is so where, as here, there is a direct injury by an illegal levy of taxes upon the individual seeking relief. It is conceded that as a resident of the municipality prosecutrix is subject to and has paid sales taxes levied by the ordinance. The question is fundamentally one of interest; and it would be a distinct disservice of principle and policy to hold that a resident of a municipality who pays real or personal property taxes has an interest which invests him with power to assail an invalid sales tax by *certiorari,* but that a resident subject only to the sales tax has no such interest. It is a rule of general acceptance that the constitutionality of a legislative act is open to attack only by a person whose rights would be infringed by its enforcement. The determinative question is whether the challenger has sustained, or is in immediate danger of sustaining, some direct and certain injury as the result of the enforcement of the statute. And it does not matter that the question of the con-

stitutionality of the act is raised by an attack upon a local ordinance adopted in pursuance of the authority which the statute purports to grant. *Premier-Pabst Sales Co.* v. *Grosscup,* 298 *U. S.* 226; 56 *S. Ct.* 754; 80 *L. Ed.* 1155; *Massachusetts* v. *Mellon,* 262 *U. S.* 447; 43 *S. Ct.* 597; 67 *L. Ed.* 1078.

The ordinance under review is set aside, with costs.