187 N.J. Super. 390 (1982)
455 A.2d 81
NEWARK SUPERIOR OFFICERS ASSOCIATION, A FRATERNAL ORGANIZATION INCORPORATED UNDER THE LAWS OF THE STATE OF NEW JERSEY AND WILLIAM GERAGHTY, THOMAS HENRY, THOMAS MARTIN, THOMAS CRITCHLEY, WILLIAM KODMAN, IRVING MOORE, ARNOLD EVANS, MARTIN REICHENBECKER, CHRISTIAN VOLZ, GEORGE HAMMER AND KENNETH MELCHIOR, PLAINTIFFS-RESPONDENTS,
v.
THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, KENNETH GIBSON, INDIVIDUALLY AND IN HIS CAPACITY AS MAYOR OF THE CITY OF NEWARK, HUBERT WILLIAMS, INDIVIDUALLY AND IN HIS CAPACITY AS POLICE DIRECTOR OF THE CITY OF NEWARK AND THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, DEFENDANTS-APPELLANTS, AND STATE OF NEW JERSEY, DEPARTMENT OF CIVIL SERVICE; HOWARD WOODSON, INDIVIDUALLY AND IN HIS CAPACITY AS CHAIRMAN OF THE CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY; AND JOSEPH M. RYAN, INDIVIDUALLY AND IN HIS CAPACITY AS ACTING CHIEF EXAMINER AND SECRETARY OF THE DEPARTMENT OF CIVIL SERVICE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 1982.
Decided November 17, 1982.
*392 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Rosalind L. Bressler, Assistant Corporation Counsel, argued the cause for appellants City of Newark, Kenneth A. Gibson, Hubert Williams and Municipal Council of the City of Newark (John J. Teare, Corporation Counsel of the City of Newark, attorney).
Mark J. Fleming, Deputy Attorney General, argued the cause for defendants State of New Jersey, Department of Civil Service, Howard Woodson, chairman of the Civil Service Commission, and Joseph M. Ryan, acting chief examiner and secretary of the Department of Civil Service (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Janet Share Zatz, Deputy Attorney General, on the brief).
Lawrence A. Whipple, Jr., argued the cause for respondents (Whipple, Hunt, Ross & Hirsh, attorneys).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This matter comes before this court on appeal from a final judgment entered by Judge Thompson December 21, 1981 declaring L. 1979, c. 163 (N.J.S.A. 40:69A-60.7) to be special legislation enacted in violation of N.J. Const. (1947), Art. IV, § VII, par. 9(13). The judgment followed a letter opinion of Judge Thompson dated July 22, 1981.
*393 The circumstances giving rise to this appeal are not complicated. The City of Newark has adopted a Mayor-Council Plan C form of government under the Optional Municipal Charter Law. N.J.S.A. 40:69A-1 et seq. The city has also adopted Title 11 of the Revised Statutes, "Civil Service," and thus employment in the city government is subject to the provisions of that title. In 1976 its chief of police retired. Under the Civil Service Law then in force a new police chief should have been selected in accordance with the procedures of classified civil service. The new police chief would then have been within the classified civil service. Plaintiff Newark Superior Officers Association, an organization consisting of deputy police chiefs in Newark, urged the Department of Civil Service to schedule a promotional examination for the position of police chief. The city was of the view that the police chief should be placed in the unclassified service. For several years no permanent appointment of a police chief was made. Instead, the position was filled on a temporary basis.
On January 26, 1978 legislation was introduced into the Senate which provided that the governing body of any city of the first class which had adopted or would thereafter adopt the Mayor-Council Plan C form of government could provide by ordinance that the mayor could appoint a police director or director of public safety and a police chief to serve during the term of office of the mayor appointing them. S. 687 (1978). These officers were to be in the unclassified civil service. A city of the first class has a population in excess of 150,000 persons. See N.J.S.A. 40A:6-4. Since Jersey City and Newark are the only cities of the first class in New Jersey and have both adopted the Mayor-Council Plan C form of government, the bill, if enacted, would have been applicable in those municipalities and in no others. Subsequently, the bill was amended in the Senate so as to limit its application to a police chief and to require that the chief appointed have at least five years' administrative and supervisory police experience. The bill as amended was passed in both the Senate and General Assembly and *394 became law on August 6, 1979. L. 1979, c. 163; N.J.S.A. 40:69A-60.7.
The Assembly Municipal Government Committee prepared a statement accompanying the bill on June 21, 1979 which reads as follows:
The Senate committee statement adequately expresses the provisions of this bill.
The bill applies to Newark and Jersey City; it comes at the request of Newark. In that city, the police director carries out long term administrative and planning policies; the police chief is responsible for the day to day implementation of those policies. The director and the chief must work closely together. The police director, in the unclassified civil service, must be responsive to the mayor and council. The police chief, on the other hand, in the classified service with tenure, may be unresponsive to the administration. By placing the office of police chief in the unclassified service, cooperation between the chief and the city administration will be assured.
The committee reports this bill with the understanding that legislation to be received by the Assembly, will deal with the problem of the relationship of the police chief to elected officials in more general terms.
Jersey City has voiced no objections to this bill.
Plaintiffs, on October 10, 1979, brought this action.[1] In addition to the Newark Superior Officers Association, 11 individual plaintiffs joined in the action. All are or were deputy police chiefs in Newark. Defendants are the City of Newark, Kenneth Gibson, mayor of the City of Newark, Hubert Williams, police director of the City of Newark, and the municipal council of the City of Newark (collectively hereinafter called "municipal defendants"). In addition, the State of New Jersey, Department of Civil Service, Howard Woodson, president of the Civil Service Commission, and Joseph M. Ryan, acting chief examiner and secretary of the commission (collectively hereinafter called "state defendants") were made defendants.
Plaintiffs in their complaint set forth that the police chief had retired, that they requested that the city ask the state defendants *395 to conduct a promotional examination for the position, that certain of the individual plaintiffs had requested the state defendants to conduct the examination, that a grievance was filed with the city over the failure of the municipal and state defendants to hold the examination and that an attempt was made to settle the dispute. Plaintiffs further alleged that they requested an investigation of the situation by the Attorney General of New Jersey, that no examination was ever scheduled and that the municipality introduced an ordinance on August 23, 1979 to appoint a police chief in the unclassified service.[2]
Plaintiffs alleged in the first count of their complaint that defendants' conduct deprived plaintiffs of salary and fringe benefits due them. In the second count plaintiffs asserted that N.J.S.A. 40:69A-60.7 had been adopted in violation of N.J. Const. (1947), Art. IV, § VII, par. 9(5), precluding the passage of private, special or local laws creating, increasing or decreasing the emoluments, term or tenure rights of public officers or employees. The third count of the complaint charged that plaintiffs' collective bargaining rights under their agreement with the municipal defendants had been violated by defendants' failure to hold the promotional examination. Plaintiffs further stated that N.J.S.A. 40:69A-60.7 impaired plaintiffs' contract with the city, contrary to N.J. Const. (1947), Art. IV, § VII, par. 3. Plaintiffs sought compensatory and punitive damages, an order compelling defendants to schedule a promotional examination and an injunction restraining the municipal defendants from appointing a police chief without an examination.
The municipal and state defendants answered separately. They admitted certain of the factual allegations of the complaint, denied others and asserted that they lacked knowledge or information sufficient to form a belief as to other allegations. *396 Both groups of defendants denied that plaintiffs were entitled to relief.[3]
The parties served cross-motions for summary judgment. They were heard by Judge Villanueva on May 1, 1981. The only affidavit submitted on the motion was that of defendant Hubert Williams, Newark police director. He indicated that he had overall responsibility for the delivery of police services within the city. He stated that he established policy and issued directives to the police department. He said that he performed community relation functions requiring the utmost sensitivity to the needs, fears and problems of the people in Newark. He pointed out that as police director of a city of 329,248 people, the largest in New Jersey, composed of persons of diverse ethnic, racial and social backgrounds, he regularly deals with "conflicts and tensions typical of large urban areas." He stated that the riots of 1967, 1968 and 1974 stood as a testament to the volatile nature of the community and that he was required to rely heavily on the police chief in performing his duties. Williams said that it is imperative that he have confidence in the police chief and that the chief "be able to act with sensitivity to community problems and tensions, that he exercise good judgment in decision making and in assisting in the formulation of policy, all of which qualifications are not measureable by the application of Civil Service standards." Williams further said that removing the office of police chief from the classified service would improve the operation of the police department and the delivery of police services and would ensure a greater degree of accountability from the top echelon of the department in carrying out policy and objectives. Finally, Williams pointed out that he requested that the mayor propose legislation excluding the police chief from the classified service, that the legislation was enacted as L. 1979, c. 163 and that Newark had adopted *397 an ordinance pursuant to the legislation providing for appointment of the police chief.
Judge Villanueva denied the motion. He noted that while the court could take judicial notice of "geographical statistical facts," the parties had not supplied him with any stipulation of fact. He further felt that Williams' affidavit appeared to be evidence that the issue of rationality and reasonableness of the statute should not be decided on a summary judgment application. He did decide, however, that plaintiffs' allegation that the Civil Service Law had been violated was premature because the constitutionality of N.J.S.A. 40:69A-60.7 had first to be determined. On May 12, 1981 he signed an order denying the motions for summary judgment and dismissing the complaint insofar as it alleged a "violation of the civil service laws and contractual provisions ... as they are presently moot."
The matter came on for final disposition before Judge Thompson on June 18, 1981. As a result of a conference among the attorneys, it was agreed that certain stipulations would be read into the record and that the judge would advise the parties if testimony would be taken. He never so advised the parties and insofar as we can ascertain the parties never requested an opportunity to present testimony. Thus no testimony was taken. The stipulations read were as follows:
The first stipulation deals with the population and numbers of uniformed police personnel in the seven largest municipalities, and those seven largest municipalities in the State of New Jersey in ranking order are as follows:
Newark, 329,248 population, police personnel of 1200.
Jersey City, 223,532 population, 853 uniformed police personnel.
Paterson, 137,970 population, 377 police uniformed personnel.
Elizabeth, 106,2011 [sic], 311 uniformed police personnel.
Trenton, 92,124 population, and 331 uniformed police personnel.
Woodbridge, 90,074 population, and 170 uniformed police personnel.
Camden, 84,910 population, 315 uniformed police personnel.
The second stipulation is that the County of Essex, which has its own police force, has a population of 850,451 with 114 uniformed police personnel.
The next two cities, while not among the largest in the municipalities, are adjacent municipalities to the City of Newark and counsel felt that it was relevant and that is the City of East Orange with a population of 77,025 and 275 uniformed police personnel.

*398 The Town of Irvington, 61,493 population and 139 police personnel.
The third stipulation is that all New Jersey Municipalities in which Title XI, that is simple [sic] service is in effect have the position of police chief in the classified service except the City of Newark. Jersey City may but has not exercised its right under the challenged Act to take the position of police chief in the unclassified service.
The last stipulation is that all police chiefs in the classified service report to and are subordinate to an elected or appointed official or officials who are in the unclassified service.
Judge Thompson decided the case in a letter opinion dated July 22, 1981. He stated that N.J.S.A. 40:69A-60.7 could affect only Newark and Jersey City. He then referred to the provisions of Williams' affidavit concerning the diversity of the city. Judge Thompson said that Newark and Jersey City are not the only cities in New Jersey that are socially, ethnically and racially diverse and that Camden, Elizabeth, Paterson and Trenton have populations reflecting a similar proportionate mixture. He considered that the only real difference between Newark and Jersey City on the one hand and the other municipalities is size. He felt that in every municipality the administration desires that the police chief be responsive to the administration's goals and the needs of the people in the municipality. In Judge Thompson's view the issue was whether population alone could support the distinction between Newark and Jersey City and all other municipalities. He recognized that the Legislature had wide discretion in determining the parameters of a classification. He pointed out that the Legislature had not determined that Newark must have a police chief appointed under the statute. Rather, it only authorized the appointment. In the circumstances he declared N.J.S.A. 40:69A-60.7 unconstitutional as special legislation.
On July 30, 1981 the municipal defendants filed an appeal with this court. Their notice of appeal recites that it is from the final judgment entered July 22, 1981. In fact, the appeal seems to have been premature because the final judgment, for some reason not explained in the record, was not entered until December *399 21, 1981.[4] The state defendants have not appealed from the judgment. Nevertheless, they submitted a brief and presented oral argument. We have determined that notwithstanding these apparent procedural errors the public interest requires that we decide this appeal on the merits.
After the appeal was filed the Legislature amended N.J.S.A. 40:69A-60.7. Under L. 1981, c. 465, § 43, effective January 9, 1982, only in cities of the first class which prior to January 9, 1982 had adopted a Mayor-Council Plan C form of government may the police chief be appointed in the unclassified civil service. It is thus clear that the intention of the Legislature was to limit the application of N.J.S.A. 40:69A-60.7 to Newark and Jersey City by this amendment regardless of possible population growth in other municipalities.
The general principles which we must consider in this case are not obscure. There is, of course, a strong presumption that N.J.S.A. 40:69A-60.7 was, as originally adopted and is, as amended, constitutional. See Harvey v. Essex Cty. Freeholder Bd., 30 N.J. 381, 388 (1959); In re Loch Arbour, 25 N.J. 258, 264-265 (1957); Kenney v. East Brunswick, 172 N.J. Super. 45, 50 (App.Div. 1980). Accordingly, we must exercise our power to declare the statute unconstitutional delicately, if at all. See Harvey v. Essex Cty. Freeholder Bd., supra, 30 N.J. at 388; Wilentz v. Hendrickson, 133 N.J. Eq. 447, 487 (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944); Kenney v. East Brunswick, supra, 172 N.J. Super. at 50.
Specifically, plaintiffs contend that the statute violates N.J. Const. (1947), Art. IV, § VII, par. 9(13), which provides that the Legislature shall not pass any private, special or local law "[r]egulating the internal affairs of municipalities formed for local government and counties, except as otherwise in this *400 Constitution provided."[5] There is no suggestion in this case that the statute was enacted in accordance with the procedure for adopting special legislation. See N.J. Const. (1947), Art. IV, § VII, par. 8; N.J.S.A. 1:6-1 et seq.
There have been numerous cases discussing what constitutes special legislation. The Supreme Court recently iterated the following:
However, the particular determinant of a special law is the appropriateness of the objects which it excludes. This well-accepted standard is found in Budd v. Hancock, 66 N.J.L. 133 (Sup.Ct. 1901), which reads as follows:
A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. [Id. at 135]
The Court has restated the principle on several occasions. In Roe v. Kervick, 42 N.J. 191, 233 (1964), we said:
A law is "general" (1) if the class of subjects established, recognized or regulated is distinguished by characteristics sufficiently marked and important to make it a class by itself, and (2) if it encompasses all of the subjects which reasonably belong within the classification, and does not exclude any which naturally belong therein.
So, too, in Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 389 (1959), we stated:
In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. Budd v. Hancock, 66 N.J.L. 133, 135-136 (Sup.Ct. 1901). If no one is excluded who should be encompassed, the law is general. Another requirement of a general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. In Van Riper v. Parsons, 40 N.J.L. 1, 9 (Sup.Ct. 1878) the court pointed out that local and special laws rest on a false or deficient classification in that "their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." See also City of Passaic v. Consolidated Police, etc., Pension Fund Commission, 18 N.J. 137, 146 *401 (1955); Sherwood v. Bergen-Hackensack, etc., Authority, 24 N.J. Misc. 48, 53-54 (Sup.Ct. 1946), affirmed, 135 N.J.L. 304-306 (E. & A. 1946). With this distinction between a special and a general law in mind, the question is whether any appropriate person is excluded to which the law, but for its limitations, would apply. Koons v. Board of Com'rs of Atlantic City, 134 N.J.L. 329, 333 (Sup.Ct. 1946), affirmed per curiam, 135 N.J.L. 204 (E. & A. 1947); In re Freygang, 46 N.J. Super. 14, 23 (App.Div. 1957), affirmed, 25 N.J. 357 (1957). [Paul Kimball Hospital, Inc. v. Brick Tp. Hospital, 86 N.J. 429, 445-446 (1981)]
In determining whether a law is special our method of analysis is:
... we first discern the purpose and object of the enactment. We then undertake to apply it to the factual situation presented. Finally we decide whether, as so applied, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act. [Vreeland v. Byrne, 72 N.J. 292, 300-301 (1977), emphasis in original]
Further, in making our determination we follow the rule that
It is well established that the Legislature has a wide range of discretion in determining classifications and distinctions will be presumed to rest upon a rational basis `if there be any conceivable state of facts which would afford reasonable support for them.' [Harvey v. Essex Cty. Freeholder Bd., supra, 30 N.J. at 390]
We have considered N.J.S.A. 40:69A-60.7, as originally adopted and as amended by L. 1981, c. 465, § 43, both on its face and as applied in order to determine whether there is any conceivable rational basis to sustain the statute. The common characteristics of the group which may adopt an ordinance providing for appointment of a police chief not within the classified civil service is that the municipality must be a city of the first class with a Mayor-Council Plan C form of government. If the amendment is disregarded, a city of the first class may still adopt this form of government and be permitted to adopt such an ordinance. But with or without the amendment, cities not of the first class, cities which have not adopted this form of government and municipalities other than cities are excluded from the class which may adopt such an ordinance.
We can conceive of no rational basis for drawing the class as the Legislature has done which excludes almost every municipality. The purpose of the statute, as shown in the Assembly *402 report and Williams' affidavit, is to assure cooperation of the police chief with the municipal administration. The parties stipulated before Judge Thompson that all police chiefs in the classified service report to elected or appointed officials who are in the unclassified service. In order to sustain the statute we would have to presume that there is some rational basis for thinking that the size of the municipality and its form of government somehow impact on the relationship between the police chief and his unclassified superior in a way that requires the police chief in certain municipalities, but not in others, also to be in the unclassified service. We perceive no such rational basis. If it is desirable to have a police chief selected other than in accordance with the classified civil service procedures in cities of the first class with a Mayor-Council Plan C form of government, the same should be true in other municipalities.
We also note that in the Mayor-Council Plan C form of government there is an unclassified police director over the police chief. This director would presumably be responsive to the mayor. According to the parties' stipulation, in some municipalities the police chief reports directly to an elected official. In these circumstances the need for an unclassified police chief is, if anything, less in a city of the first class with a Mayor-Council Plan C government than in other municipalities.
A consideration of the matter with particular reference to Newark and the problems facing that city leads to no different result. Williams' affidavit leads inexorably to the conclusion that the statute constitutes special legislation. He indicates that he deals with persons of diverse ethnic, racial and social backgrounds and with the conflicts and tensions "typical" of large urban areas. He further states that riots in 1967, 1968 and 1974 stand as a testament to the volatile nature of Newark. We do not doubt the accuracy of his affidavit. But the difficulty with it is that Newark is, as defendant Williams recognizes, "typical." The difference between Newark and other municipalities is that it is larger. We fail to discern any reason why in a municipality with the characteristics of Newark and the *403 necessity of a sensitive police chief that size should make a difference in the method of appointment.
It is true that the record before us is most general with respect to the characteristics of Newark and that we have even less information in the record concerning the other municipalities. We are only told their population and the number of uniformed policemen employed in each. We consider that the facts that other municipalities have diverse populations and that volatile situations have arisen in them are so generally known that they cannot reasonably be subject to dispute. Thus we may take judicial notice of them. Evid.R. 9(1).
The reports of the Supreme Court of New Jersey themselves mention some of the very riots to which defendant Williams alluded. They were not confined to Newark. See R.L. Mulliken, Inc. v. Englewood, 59 N.J. 1(1971); A & B Auto Stores v. Newark, 59 N.J. 5 (1971); Manzo v. Plainfield, 59 N.J. 30 (1971); Comment, "A & B Auto Stores; Municipal Liability for the Modern Riot," 25 Rutgers L.Rev. 341 (1971); "Proceedings," 59 N.J. XXVIII-XXIX (1971). Indeed, it is noteworthy that Englewood and Plainfield, municipalities in which riots took place, are not among the seven largest in New Jersey. Can it rationally be contended that in Plainfield and Englewood a police chief able to act with sensitivity to community problems is not needed? If such a police chief is needed, why will he be produced there and not in Newark by the procedures of classified civil service? We see no logical reason to exclude other municipalities with diverse populations from the class of municipalities entitled to adopt an ordinance authorizing appointment of a police chief to serve in the unclassified civil service.
We recognize, of course, that there has been much litigation concerning the validity of legislation drawing classes based on population challenged as special. While these cases involve different legislation and are thus distinguishable from our case, *404 nevertheless it is helpful to consider some of them. In Kenney v. East Brunswick, supra, 172 N.J. Super. at 45, we declared N.J.S.A. 40A:9-5 to be unconstitutional. That statute provided that in counties of the first or second class, municipal and county employees would retain their prior service credit benefits upon transfer to other municipal or county employment. Employees in counties of the third, fourth, fifth and sixth classes were excluded from participating in such benefits. We held that considering the purpose of the statute, conservation of seniority rights, the exclusion was arbitrary. 172 N.J. Super. at 52.
In Mason v. Paterson, 120 N.J. Super. 184 (Law Div. 1972), aff'd 62 N.J. 471 (1973), the court declared unconstitutional as special legislation the form of government unique to Paterson in which essentially all local legislative functions were performed by officials appointed by the mayor. Elsewhere in the State such functions were performed by elected officials. Id. 120 N.J. Super. at 190. The court considered that in the absence of an explanation for such a distinction the classification was illusory and thus the legislation authorizing the structure of the Paterson government was special. Id. 120 N.J. Super. at 190-191. It is true, of course, that in our case we do have an explanation of why the legislation is desirable for Newark. What we do not have is a reasonable explanation of why the legislation is not equally desirable for other municipalities.
In Koons v. Atlantic City, 134 N.J.L. 329 (Sup.Ct. 1946), aff'd o.b. 135 N.J.L. 204 (E. & A. 1947), the former Supreme Court declared unconstitutional a statute which authorized any seaside or summer resort city bordering on the Atlantic Ocean with a population in excess of 50,000, and in which a hurricane damage emergency was declared to exist, to adopt a sales tax. The statute could apply only in Atlantic City. Since the purpose of the statute was to raise money to repair hurricane damage and since other municipalities along the coast had similar problems, *405 the classification was unreal and illusive. Id. 134 N.J.L. at 335. Population bore no relationship to the purpose of the statute.
Notwithstanding the presumption of validity given to legislation making classifications on the basis of population, the court, as it did in Kenney, Mason and Koons, must look carefully at the purpose and object of an enactment and see whether in the particular case the classification has a rational or reasonable basis relevant to the purpose and object. In those cases the court made such inquiry and found no such rational or reasonable basis. Thus the legislation was special.
For cases where our courts have found that the Legislature in drawing classifications has had a rational or reasonable basis relevant to the purpose and object of the legislation, see Williams v. Smith, 94 N.J. Super. 341 (App.Div. 1967), aff'd o.b. 51 N.J. 161 (1968), and McDonald v. Hudson Cty. Freeholder Bd., 99 N.J.L. 393 (E. & A. 1924).
Each of the above cited cases, those invalidating as well as those sustaining legislation challenged as special, demonstrate that the courts, notwithstanding the deference they must pay to the Legislature, are obliged to consider carefully the object of the enactment and determine if a classification rests on any rational or reasonable basis relevant to the object. This we have done and we have found N.J.S.A. 40:69A-60.7, both before and after its amendment, to be deficient.[6]
The judgment of December 21, 1981 is affirmed.
NOTES
[1] It was brought in the Superior Court, Chancery Division, and later transferred to the Law Division.
[2] According to an affidavit of defendant Williams submitted on the motion for summary judgment, later described, the ordinance was enacted.
[3] They also raised certain affirmative defenses, but since they are not pressed on this appeal they need not be enumerated.
[4] In view of this lengthy delay it would appear that R. 4:42-1(a) was violated.
[5] Plaintiffs in their complaint contended that the statute violated N.J. Const. (1947), Art. IV, § VII, par. 9(5). The trial court decided that the legislation violated par. 9(13). Plaintiffs have adopted that position, thus slightly shifting their ground.
[6] Plaintiffs contend that the statute violates N.J. Const. (1947), Art. VII, § 1, par. 2. In view of our disposition we do not reach this issue. Plaintiffs asked in their complaint for damages, for an order compelling the holding of a promotional examination and for an injunction against the municipal defendants appointing a police chief. They received no such relief. The final judgment simply declared the statute unconstitutional as special legislation. Plaintiffs have not cross-appealed. We assume that defendants will now comply with the laws providing for an appointment of a police chief in classified civil service.