THE CENTRAL RAILROAD COMPANY OF NEW JERSEY,
PLAINTIFF IN ERROR, v. DAVID BAIRD ET AL., THE
STATE BOARD OF ASSESSORS AND J. WILLARD MOR-
GAN, STATE COMPTROLLER, DEFENDANTS IN ERROR.

THE MORRIS AND ESSEX RAILROAD COMPANY, PLAINT-
IFF IN ERROR, v. DAVID BAIRD ET AL., THE STATE
BOARD OF ASSESSORS AND J. WILLARD MORGAN,
STATE COMPTROLLER, DEFENDANTS IN ERROR.

THE LEHIGH VALLEY RAILROAD COMPANY OF NEW JER-
SEY, PLAINTIFF IN ERROR, v. DAVID BAIRD ET AL.,
THE STATE BOARD OF ASSESSORS AND J. WILLARD
MORGAN, STATE COMPTROLLER, DEFENDANTS IN
ERROR.

THE BERGEN COUNTY RAILROAD COMPANY, PLAINTIFF
IN ERROR, v. DAVID BAIRD ET AL., THE STATE BOARD
OF ASSESSORS AND J. WILLARD MORGAN, STATE
COMPTROLLER, DEFENDANTS IN ERROR.

THE LONG DOCK COMPANY, PLAINTIFF IN ERROR, v.
DAVID BAIRD ET AL., THE STATE BOARD OF ASSESS-
ORS AND J. WILLARD MORGAN, STATE COMP-
TROLLER, DEFENDANTS IN ERROR.

THE UNITED NEW JERSEY RAILROAD AND CANAL COM-
PANY ET AL., PLAINTIFFS IN ERROR, v. W. FRANK
PARKER, COLLECTOR, &c., DEFENDANT IN ERROR.

Argued November 20, 1907—Decided January 7, 1908.

1. In determining whether a supplement to an existing statute vio-
lates constitutional provisions, the supplement is not to be exam-
ined as an independent enactment, but is to be considered in
connection with, and as a part of, the statute upon which it is
engrafted, and if the supplement does not operate to render the
statute, as amended, unconstitutional, it is valid legislation.

2.  A scheme for the taxation of railroad and canal property which provides that the main stems or rights of way of railroads, and the waterways of canals, not exceeding one hundred feet in width, and the franchises and personal property used for railroad or canal purposes of the companies owning such railroads and canals, shall be taxed at the average rate of taxation which prevails in the various taxing districts of the state, and that the remaining portion of the property of such companies which is used for railroad or canal purposes shall be taxed at the local rate which prevails in the respective taxing districts in which it is located, does not violate either the state or the federal constitution.

3.  There is no constitutional prohibition against legislation which provides for the taxation of the main stem or right of way of a railroad at one rate and of the passenger stations located thereon at a different rate.

4.  Property used for railroad and canal purposes forms a legitimate class for purposes of taxation, and an act which provides a scheme for the assessment and taxation of all property so used is a general law, but a provision in such an act which separates a part of such property from the general mass thereof, and requires that such part be assessed and taxed by a different method and for a different purpose, destroys the generality of the law, and renders it obnoxious to that clause of the state constitution which declares that property shall be assessed for taxes under general laws.

On error to the Supreme Court, whose opinion is reported *ante p.* 120.

For the plaintiffs in error, *Richard V. Lindabury, James B. Vredenburgh, Charles L. Corbin, William H. Corbin, William D. Edwards* and *George Holmes.*

For the defendants in error, *Robert H. McCarter,* attorney-general, *Bennet Van Syckel, John R. Hardin* and *Edwin C. McKeag.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The several plaintiffs in error, who were the prosecutors below, attack by these proceedings the constitutionality of three supplements to the act for the taxation of railroad and canal property, approved respectively on the 5th of April, the 18th of April and the 18th of

May, in the year 1906. The original act was passed in the year 1884. The scheme of taxation provided by it was as follows: After declaring that all the property of any railroad or canal company not used for railroad or canal purposes should be assessed and taxed by the same assessors, and in the same manner and at the same rate, as the taxable property of other owners in the same municipal division or taxing district, the act created a state board of assessors to assess all the property of railroad and canal companies used for railroad or canal purposes, and directed that the board should ascertain the true value of such property, and that in so doing they should ascertain separately, *first,* the length and value of the main stem of each railroad, and of the waterway of each canal, and the length of such main stem and waterway in each taxing district; *second,* the value of the other real estate used for railroad or canal purposes in each taxing district, including the roadbed (other than main stem), waterways, reservoirs, tracks, buildings, water tanks, riparian rights, docks, wharves and piers, and all other real estate, except lands not used for railroad or canal purposes; *third,* the value of all the tangible personal property of each railroad and of each canal company, and *fourth,* the value of the franchise. It then declared that the term "main stem" should be held to include the roadbed, not exceeding one hundred feet in width, with its rails and sleepers, and the depot buildings used for passengers connected therewith, and that the term "waterway" should be held to include the towing path and berme bank. It defined also the terms "taxing district" and "tangible personal property" as used in the act. It provided that the state board of assessors should be governed by the valuation of the local assessors, if lower than theirs, in ascertaining the value of the real estate used for railroad and canal purposes not included in the main stem or waterway, and that the local assessors should certify to the board a description of the property of any railroad or canal company within their respective taxing districts, both that *not used* for railroad or canal purposes and that used for such purposes, excepting the main stem and waterway as defined by the act,

and also their valuation of those properties, and the local rate of taxation for county and municipal purposes. It further provided that if in any taxing district there should be several branch lines of railroads belonging to, or controlled by, one company, or operated under one management, the state board of assessors should designate one of them as main stem, and that the others should be treated as "other real estate used for railroad purposes." It then provided that the state board of assessors should, upon the completion of their valuation and assessment, proceed to compute the tax upon the entire assessed valuation of each railroad company, and of each canal company, as ascertained by them; that upon such valuation each company should pay to the state, for state purposes, a tax at the rate of one-half of one per cent. annually upon each dollar of valuation, and that the state board of assessors should compute the same; that each company should also pay, in addition to said tax of one-half of one per cent., a tax at the local rate, as fixed and assessed for county and municipal purposes upon other property in each taxing district, upon the valuation of its property in the several taxing districts, separately valued and assessed under the provisions of the act, which tax should also be computed by the state board of assessors, but that the last-mentioned rate should in no case exceed one per cent. of the valuation of the property separately valued under the provisions of the act; that if said board, upon complaint of any company, should in any case ascertain that the addition of the state tax of one-half of one per cent. to the local rate, as limited in the act, would compel any company to pay more tax than the tax such company would pay if such company did not pay the state tax of one-half of one per cent., but did pay full local rates on all of its property and franchises used for railroad and canal purposes, that then the said board should make such deduction as would make the tax equal to the amount that such company would pay upon all such property and franchises if assessed at full local rates, without any state tax of one-half of one per cent. The act then provided that the sum of the estimates or computations for each company should constitute the tax to be

paid by each company, and should be a lien, paramount to all other liens, upon all the lands and tangible property and franchises of said company in this state; that it should be due and payable into the state treasury on any day between the 1st day of November and the 1st day of February following, and that it should be a debt due from such company to the state on the 1st day of December, for which an action at law or in equity might be maintained, and which should be a preferred debt in case of insolvency. Of the taxes assessed under the act, the one-half of one per cent. assessed upon all property used for railroad or canal purposes is appropriated to state purposes, and the remaining portion of the tax, assessed upon real estate outside of main stem or waterway, and located in the different taxing districts, is required to be allotted by the state comptroller to those districts, giving to each the amount derived from the property of each railroad or canal company therein. *Pamph. L.* 1884, *p.* 142.

This legislation was almost immediately attacked by the railroad and canal companies affected by it, upon the ground that it violated that provision of our state constitution which requires that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value," and also because it infringed that provision of the federal constitution which prohibits the states from depriving any person of life, liberty or property without due process of law. At the hearing had of those causes in this court at the March Term, 1886, the constitutionality of the law was affirmed, all but three of the judges concluding that the taxation imposed by the act was valid *in toto,* Justices Dixon and Reed considering that it was invalid so far as the additional burden imposed upon real estate outside of main stem was concerned, but valid as to the tax of one-half of one per cent. imposed upon the whole mass of the property, while Justice Depue considered that the legislation was invalid because it attempted to assess taxes by a rule which was not uniform. *Central Railroad Co.* v. *State Board of Assessors, 19 Vroom* 146.

In the year 1888 the act of 1884 was revised by the legislature, and two of the provisions contained therein were eliminated, viz., (1) that which required the state board of assessors to be governed by the valuation of the local assessors in ascertaining the value of the real estate used for railroad or canal purposes not included in the main stem or waterway, when such valuation should be lower than theirs, and (2) that which required the state board of assessors, when there should be several branch lines of railroad in any taxing district belonging to, or controlled by, one company, or operated under one management, to designate one of them as main stem, and treat the others as "real estate outside of main stem used for railroad purposes," these two provisions having been declared invalid by the Supreme Court in the case of *Central Railroad Co.* v. *State Board of Assessors,* 20 *Vroom* 1. The rest of the statute, however, was left by the revision practically as it was originally enacted. *Pamph. L.* 1888, *p.* 269.

No changes of any importance were afterward made in the statute until the year 1897, when it was amended by the legislature so as to provide that all moneys raised by the taxation of real estate used for railroad or canal purposes other than main stem or waterway should be paid over by the state comptroller to the various taxing districts in which the property was situate. *Pamph. L.* 1897, *p.* 147. The legality of this amendment has never been before the courts for consideration, but its constitutionality must be accepted as having been established by this court, by necessary implication, in the case of *Bergen and Dundee Railroad Co.* v. *State Board of Assessors,* 45 *Vroom* 742, hereinafter referred to.

In the year 1905 the legislature further amended the statute, so far as the burden imposed upon real estate outside of main stem or waterway was concerned, by repealing the limitation which prohibited its taxation at more than one and one-half per cent. and enacting that thereafter it should bear the same burden as other taxable property located in the same taxing district. No change, however, was made in the machinery for its assessment and collection. *Pamph. L.* 1905, *p.* 189. The validity of this amendment was promptly chal-

lenged in the courts upon the same grounds upon which the original act of 1884 was attacked, and this court, in the case of *Bergen and Dundee Railroad Co.* v. *State Board of Assessors, supra,* declared that this change in the rate of taxation upon real estate outside of main stem or waterway did not render the act, as amended, unconstitutional.

This detailed recital of the legislative scheme for the taxation of property used for railroad or canal purposes, as it existed at the time of the passage of the first of the supplements enacted in the year 1906, and of the decisions of this court upon the question of its constitutionality, is necessary for the purpose of making plain the grounds upon which we rest our determination of the causes now under consideration, for the reason that we accept as settled the principles established by those decisions, and as controlling us in our determination, so far as they are applicable to the questions now presented for solution.

It is to be borne in mind, in dealing with those questions, that each of the three supplements subjected to attack by these proceedings is entirely independent, passed at different times, and having no relation to one another until they were engrafted upon, and became a part of, the original act of 1884, and that we are to consider, therefore, what effect each supplement in turn had upon the constitutionality of the parent act when it took its place in that act as a component part thereof.

Turning now to the first of these supplements. Its sole purpose is to change the rate of taxation upon property used for railroad and canal purposes (except "real estate outside of main stem or waterway") from one-half of one per cent. (the rate established by the original act) to the average rate of taxation prevailing in the various taxing districts of the state. It provides a method by which that average rate shall be ascertained each year, and requires the state board of assessors to value and assess the main stem of the railroad of each railroad company and the waterway of the canal of each canal company, the tangible personal property of these companies used for railroad or canal purposes and their fran-

chises, and, upon the completion of such valuation and assessment, to proceed to compute the tax upon the entire valuation of the designated property of each railroad and of each canal company at the rate specified therein. *Pamph. L.* 1906, *p.* 121. This is a complete summary of the supplement. Its constitutionality is challenged by the several plaintiffs in error upon the following grounds: *First,* because it is special legislation, and consequently violates article 4, section 7, paragraph 12 of the state constitution, which requires that property shall be assessed for taxes under general laws, and by uniform rules, according to its true value; *second,* because it prescribes a rule for taxation which is not uniform, and in this respect also violates the paragraph of the constitution just mentioned; *third,* because it prescribes a rule for assessing property not according to its true value, but contrary thereto, in further violation of the constitutional paragraph referred to, and *fourth,* because it denies to the companies affected by it the equal protection of the laws, in violation of the fourteenth amendment of the constitution of the United States.

These several grounds of attack upon the constitutionality of the supplement, and the able arguments of counsel of plaintiffs in error in support of them, rest principally upon the assumption that it is an independent enactment, by force of which a certain portion of the property of railroad and canal companies used for railroad or canal purposes is arbitrarily selected from the mass of property so used and a separate tax imposed upon the portion so selected. If this was the fact it would be difficult to avoid the conclusion which counsel insist should be reached. The supplement, however, is plainly not an independent enactment, but a mere amendment of the act of 1884, making no change whatever in that act, as has already been pointed out, except by substituting in the place of the tax rate of one-half of one per cent., fixed by the original act as the basis for the taxation of main stem or waterway, tangible personal property and franchises, the average rate prevailing in the various taxing districts of the state, and by directing how that average rate should be

ascertained. The provision requiring the state board of assessors to value and assess separately the property described therein injects nothing new into the original act, as will be seen by a reference to the provisions of that act as hereinbefore recited. The fixing of a different rate of taxation for the designated portion of the property from that fixed for the taxation of "real estate other than main stem or waterway" is also a feature of the original act, for, although the original act first imposed a tax of one-half of one per cent. upon all property used for railroad or canal purposes, and then an additional amount, not exceeding one per cent., upon real estate outside of main stem or waterway, the result was that the latter species of property was taxed at a different rate from that imposed upon main stem or waterway, tangible personal property and franchises. Moreover, the supplement of 1905, the constitutionality of which was affirmed in the case of *Bergen and Dundee Railroad Co.* v. *State Board of Assessors, supra,* emphasizes this difference in the rate of taxation by providing that "real estate outside of main stem or waterway" should be taxed at the local rate prevailing in the various taxing districts in which the same was situated, leaving the one-half of one per cent. rate to be imposed only upon main stem or waterway, tangible personal property and franchises. The decisions of this court in the cases referred to having established that a scheme for the taxation of property used for railroad and canal purposes which requires the taxing board, in ascertaining the true value thereof, to ascertain separately the value of several arbitrarily designated parts, and which taxes one of those parts at a different rate from the others, does not violate the provisions either of the state or federal constitution appealed to by the plaintiffs in error, we must either refuse to follow those decisions or else declare that the supplement under consideration does not operate either to make the law special or to make the rate of taxation non-uniform; that it does not prescribe a rule for assessing property at other than its true value or deny to the plaintiffs in error the equal protection of the laws. As we have already stated, we accept as settled the principles estab-

lished by those decisions, and we therefore declare that the supplement of April 5th, 1906, does not, by becoming a part of the act for the taxation of railroad and canal property, render that act unconstitutional.

It has not been contended before us that an "average rate," to be computed by the state board of assessors, is unconstitutional merely because it is an average rate, to be so ascertained, rather than some other rate definitely fixed by the legislature. As the question is in the case, however, we deem it proper to say that it has received consideration by us, and that we concur entirely in what was said by Mr. Justice Pitney, speaking for the court below, in dealing with it. We think, further, that this court by its decision in the 19 *Vroom* case, that an arbitrary rate of one-half of one per cent. fixed by the legislature, and which was to continue for an indefinite period, without regard to what amount of money would be required from year to year for the needs of the state, was constitutional, established the right of the legislature to arbitrarily fix such rate for the taxation of this class of property as it might from time to time see fit, provided that the burden imposed was not at any time greater than that which the property of the other taxpayers in the various taxing districts of the state was required to bear.

The supplement next attacked is that of April 18th, 1906. *Pamph. L., p.* 220. It provides that the term "main stem" of each railroad company, as used in the act of 1884, shall be held to include the roadbed, not exceeding one hundred feet in width, with its rails and sleepers, and all structures erected thereon and used in connection therewith, not including, however, any passenger or freight buildings erected thereon. By the original act passenger depots were defined to be a part of the main stem, without regard to whether they were within or without the one-hundred-foot limit, while freight buildings were included in the "real estate outside of main stem," whether they were located within or without the one-hundred-foot strip. As a consequence a different rate of taxation prevailed as between passenger depots and freight depots, irrespective of location. The supplement now under consideration

deals with passenger depots as the original act dealt with freight stations; that is, it separates them from main stem and subjects them to the rate of taxation imposed upon "real estate outside of main stem." This severing of passenger depots from the land upon which they stand, and subjecting them to a different rate of taxation from that imposed upon that land, is claimed by the plaintiffs in error to be violative of the constitutional provisions heretofore referred to. But, as has been just pointed out, this same feature existed in the original act, which severed freight buildings erected upon the "main stem" from the land upon which they stood, and subjected them to taxation at a different rate from that imposed upon the land itself. And yet that provision of the act was held by this court, in its decision in the 19 *Vroom* case (not expressly, but by necessary implication), not to render the act unconstitutional. We are not able to see any distinction between passenger stations and freight stations, as subjects of taxation, which would justify us in declaring that the legislature might provide for the severance of the latter class of buildings from the land upon which they stand, for the purpose of taxing them at a different rate from that land, without violating any constitutional provision, but that the constitution prohibits a similar legislative provision with relation to passenger stations. We consider that, under the decision of this court in the 19 *Vroom* case, the supplement now being discussed must be held not to have rendered the act of which it became a part unconstitutional.

The last of the supplements which it is contended renders the scheme of taxation violative of the constitutional provisions already specified is that of May 18th, 1906. *Pamph. L., p.* 571. It is as follows: "The taxes which shall hereafter be assessed upon the property of railroad and canal companies referred to in subdivision 2 of section 3 of the act to which this act is a supplement [that is, 'real estate outside of main stem or waterway'] shall be assessed and taxed in each taxing district in this state in the same manner and at the same rate as other property located in said taxing district is assessed and taxed, and the amount of tax derived there-

from shall be paid to the officer of each of the separate taxing districts of the state as shall be by law entitled to receive the same for the use of said taxing district."

Reading this supplement into the act of 1884 we have this scheme for the taxation of the property of railroad and canal companies: (1) The assessment and taxation of so much of their property as is *not used* for railroad or canal purposes, and of all of the real estate of such companies which *is used* for such purposes (except a strip one hundred feet wide, with the rails, sleepers and structures, other than passenger or freight depots, thereon), including the roadbed outside of the one-hundred-foot strip, waterways, reservoirs, tracks, passenger and freight stations, &c., &c., in the same manner, at the same rate and for the same purposes as the taxable property of other owners in the same municipal division or taxing district; (2) the assessment and taxation of what remains of their property used for railroad or canal purposes, *i. e.,* the one-hundred-foot strip, the tangible personal property and the franchises, in a different manner, at a different rate and for different purposes than those for which the taxable property of other owners in the state is assessed and taxed. In other words, the effect of this act, with this last supplement engrafted upon it, is to separate from the mass of the property of these companies which is used for railroad or canal purposes certain specified parts thereof, and to treat the property so separated as constituting a class for the purpose of taxation. Has such a scheme of taxation been declared constitutional by our former decisions in the Central railroad and the Bergen and Dundee railroad cases?

It is argued on behalf of the state, and was considered by the court below, that this supplement merely alters the machinery created by the original act for the assessment and collection of the taxes imposed by it, and makes no fundamental change in the scheme of taxation itself; that the original act not only segregated for taxation property used for railroad or canal purposes, but, after doing so, distributed it into arbitrary parts or sub-classes, and dealt with these sub-classes as independent subjects of taxation, and that this

court, by affirming the constitutionality of the act as origi-
nally passed, and as amended by the supplement of 1905, has
necessarily affirmed the right of the legislature to sub-classify
such property for taxation and tax such sub-classes by differ-
ent methods, for different purposes and at different rates.

It must be conceded that certain expressions in our opinion
in the Bergen and Dundee case lend color to the idea that the
view above expressed was assumed by us to be that held by the
judges in the earlier case. The determination of the Bergen
and Dundee case, however, involved only the question of the
power of the legislature to change the *rate* of taxation so far
as "real estate other than main stem or waterway" was con-
cerned, and not its power to tax independently an arbitrarily
selected portion of property used for railroad or canal pur-
poses, and what was said by us as to the conclusion to be
gathered from the opinions in the Central railroad case, with
reference to the view of the judges upon the latter point, was
not only not required for the decision of the case then under
consideration, but was not (as we conclude after more mature
deliberation) justified by the opinions themselves. The act
of 1884 was capable of being construed as designed to author-
ize either (1) an annual tax for the direct use of the state,
and also an independent annual tax for each taxing district,
to be levied upon "real estate outside of main stem or water-
way," or (2) as designed to authorize a single annual tax to
be levied on all property in the state used for railroad or
canal purposes under a franchise. The first construction
would result from giving controlling force to the declaration
of the act that "each company shall pay to the state for gen-
eral state purposes a tax at the rate of one-half of one per
cent. annually, * * * and shall also pay, in addition to
said tax of one-half of one per cent., a tax at the local rate"
upon real estate outside of main stem or waterway, and that
the money received for the tax assessed at the local rate upon
real estate outside of main stem or waterway should be dis-
tributed among the several taxing districts in which it is
located. The other construction would result from giving
controlling force to the declaration of the act that the sum of

these two impositions "shall constitute *the tax* to be paid by each company, and shall be *a* lien upon *all* the lands and tangible property and franchise of such company," and the further declaration of the statute that "the said tax [*i. e.*, the sum of the two impositions] shall be *a debt* due from such company *to the state* for which an action at law or in equity may be maintained." That the effect of adopting the construction first suggested would be to render the act special, and therefore unconstitutional so far as the local tax is concerned, is, we think, demonstrated by that part of the opinion of Mr. Justice Dixon which deals with this phase of the case. He says: "The question is whether the law for the imposition of this [*i. e.*, the local] tax is general. In making the assessment the property to be valued, and upon the valuation of which the tax is to be paid, is that described in subdivision 2 of section 3 [that is, 'real estate other than main stem or waterway'], exclusive of the property mentioned in the other subdivisions. Is such property capable of being regarded as a class? There must be conceded to the legislature a large discretion on the subject of classification, but with this in mind I have not been able to find any fair basis on which the property thus submitted to special taxation for local uses can stand as a class by itself. How does the main stem of a railroad, to the width of one hundred feet, differ, as a class of property, from the main stem lying beyond that width? On what principle are passenger depots ranked with the main stem, and freight depots, water tanks and all the other necessary adjuncts of a railroad excluded? What stamps the locks and berme banks of a canal with one character and its planes and feeders with another? How will you describe or conceive of, as classes of property, groups so segregated? The divisions thus constituted by the legislature seem to me to be defined by no substantial distinctions, but to be purely arbitrary and fanciful, and a law which deals with them exclusively is special and not general."

The fact that none of the judges who held that the law was constitutional *in toto* attempted to refute this view; the fact that they considered the law general because property used

for railroad and canal purposes constitutes a class for the purpose of taxation by reason of the use to which it is put, and, more than all, the fact that they affirmed the constitutionality of the law in its entirety, satisfies us that they considered the latter of the constructions suggested to be the true one. Indeed, Chancellor Runyon, who delivered the leading opinion of the majority, expressly so declares. He says: "The objection is made that in the act only the property mentioned in subdivision 2 of section 3 (real estate used for railroad or canal purposes, not including main stem or waterway) is subjected to assessment for taxation for county and municipal purposes. * * * But if the taxes be but one tax, and the legislature has the right to fix the amount of that tax by the means adopted, it follows that the objection is without real foundation, for the legislature has the right to say what tax the companies, in view of the peculiar character of their property, shall pay, and in what way it shall be assessed, provided it makes the assessment under general laws, and by uniform rules, according to the true value of the property. * * * The tax applied to state purposes and that applied to county and municipal purposes are one tax, and are to be so regarded."

We conclude, therefore, that the decision of this court in the Central railroad case affords no support to the contention that the legislature may separate railroad and canal property into arbitrarily designated parcels, and separately tax such parcels by different methods at different rates and for different purposes. It seems hardly necessary to add that, under the construction which we find to have been given to the act of 1884 by the decision which we have been discussing, the contention that the supplement under consideration does. nothing except to alter the rate at which "the local tax" imposed by the act is to be assessed has no foundation upon which to rest.

Being of opinion that the question whether the engrafting of this supplement upon the act of 1884 (as amended by the other legislation heretofore referred to) renders that act unconstitutional is still an open one, we proceed to its determi-

nation. If the effect of this supplement had been to relegate to the general mass of the taxable property of the state all property used for railroad and canal purposes except "real estate other than main stem or waterway," to be taxed as a part of such general mass under the General Tax law of the state, and to retain the excepted property for taxation under the provisions of the act of 1884, the extract from the opinion of Justice Dixon, already quoted, would be dispositive of the question, for, as has been already stated, it demonstrates, as we think, that such legislation would be not general, but special, and therefore violative of the constitutional prohibition. Does the fact that the reverse is what is attempted to be accomplished by the supplement afford any ground for reaching a different conclusion? We think not. The fundamental proposition underlying the decision in the 19 *Vroom* case is that property used for railroad or canal purposes constitutes a class for taxation *by reason of its use,* and that a tax law which is operative *upon the whole mass of the property so used* is a general law. Bearing in mind the oft repeated declaration of this court that a law, to be general, must operate equally upon all of a group of objects which, having regard to the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, and also remembering that the characteristic which constitutes property used for railroad or canal purposes a class for the purpose of taxation is *the use to which it is put,* it seems impossible to resist the conclusion that a law which does not embrace in its operation all property so used is special, not general, legislation. The present law, with the supplement of May 18th, 1906, incorporated into it, does, it is true, profess to deal with all property used for railroad or canal purposes. It does not, however, do so in fact. It divides such property into four parcels, and then creates a scheme for the independent taxation, for state purposes, of three of those parcels and leaves the fourth to be taxed under the General Tax law of the state, for the benefit of the several taxing districts in which it is located.

The fact that the supplement of May 18th, 1906, is void

does not, in our judgment, operate to destroy the act itself. The supplement never had any vitality. It is as if it had never been passed, for it cannot be conceived that the legislature intended that the whole act should fail unless the provision of the supplement could be engrafted upon it, especially in view of the fact that the statute itself (section 26) declares that if any portion of the act shall, for any reason, be held to be unconstitutional or invalid, it shall not affect the other provisions of the act, or any of them. We hold, therefore, that the act of 1884, as revised in 1888, together with the several supplements which were engrafted thereon prior to May, 1906, and which have been commented upon herein, constitute the existing legislative scheme for the taxation of railroad and canal property.

The conclusions which we have reached upon the various questions discussed in this opinion lead to a reversal of the judgment of the Supreme Court in the case of *United New Jersey Railroad and Canal Co.* v. *Parker*, Collector, that judgment having declared valid a tax assessed by the local assessors of the city of New Brunswick for local purposes upon that portion of the property of the plaintiff in error designated by the Railroad Tax act as "real estate other than main stem," and situated in that municipality. As to the judgments in the other cases under review, our conclusions lead to their affirmance. The taxes in those cases were assessed by the state board of assessors, under the provisions of the Railroad Tax act, for state purposes, and while it is true that they were not assessed upon all of the property of the plaintiffs in error used for railroad or canal purposes (the state board of assessors having acted upon the supposition that they were debarred from imposing them upon the property described in the supplement of May 18th, 1906), this fact worked no harm to them, for the reason that the only result to them was to diminish, for the time being, the amount of the taxes which they were respectively required to pay.

The judgments in the cases of the Central Railroad Co. v. State Board of Assessors, the Morris and Essex Railroad Co. v. State Board of Assessors, the Lehigh Valley Railroad Co.

*v.* State Board of Assessors, the Bergen County Railroad Co. *v.* State Board of Assessors, and the Long Dock Co. *v.* State Board of Assessors, were each affirmed by the following vote:

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUS-TICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 13.

*For reversal*—None.

The judgment in the case of the United New Jersey Railroad and Canal Co. *v.* Parker, Collector, was reversed by the following vote:

*For affirmance*—None.

*For reversal*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.     12.