197 N.J. Super. 89 (1984)
484 A.2d 59
THE NEW JERSEY STATE LEAGUE OF MUNICIPALITIES, AN ASSOCIATION NOT FOR PROFIT, AND RICHARD B. NASHEL AND SUSAN B. NASHEL, INDIVIDUALLY, PLAINTIFFS,
v.
IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 12, 1984.
*91 Edward G. Rosenblum for plaintiffs (Rosenblum & Rosenblum, attorneys).
Harry Haushalter for defendant (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
EVERS, J.T.C. (temporarily assigned).
Plaintiffs, the New Jersey State League of Municipalities and Richard B. Nashel and Susan B. Nashel have moved for summary judgment declaring that L. 1982, c. 220 as amended by L. *92 1983, c. 155, violates Art. VIII, of the New Jersey Constitution.[1]
Chapter 220 (N.J.S.A. 54:4-23a) provides:
Any other law to the contrary notwithstanding, no building or other structure newly constructed on any parcel of real property and intended for occupancy and use for residential purposes as a single family dwelling shall be added to the assessment list as real property subject to taxation until a certificate of occupancy or temporary certificate of occupancy has been issued and unless the building or other structure is actually occupied and used for such purposes; provided, however, that such building or structure shall be omitted from taxation for a period not to exceed 24 months. At the termination of the 24 month period or following the granting of a certificate of occupancy or temporary certificate of occupancy and the occupation and use of the building for residential purposes, the building or structure shall be assessed and taxed as of the first day of the month following the date of such use for the proportionate part of said year then remaining.
Nothing in this act shall be construed as applicable to any addition to, or improvement or alteration of, any existing buildings or structure. Nothing in this act shall be construed to omit from taxation any building or structure or portion of a building or structure subject to taxation prior to the effective date of this act.
Chapter 155 amended c. 220 and provided that the term "newly constructed" refers to construction which was commenced on or after December 29, 1982 and further that "construction" is deemed to be commenced on the date of the footing inspection.
Article VIII, § 1, pars. 1(a) and 2 of the New Jersey Constitution states:

*93 1. (a) Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value, except as otherwise permitted herein, and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district.
2. Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, education, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit.
Plaintiffs claim that any attempt to classify c. 220 as an exemption statute, which classification would subject it to the requirements of New Jersey Constitution, Art. VIII, § 1, par. 2, is altogether devoid of merit. As such they argue that Art. VIII, § 1, par. 1(a), which requires that all property be taxed according to the same standard of value, applies. They therefore contend that c. 220 must fall because to overcome the constitutional impediments posed by par. 1(a) a constitutional amendment is required. Centex Homes of N.J. v. Manalapan Tp., 4 N.J. Tax 599 (Tax Ct. 1982). Alternatively they argue that if c. 220 is determined to be an exemption statute it is repugnant to par. 2 because it constitutes special legislation in contravention thereof. In order to address these arguments an understanding of the legislative history of c. 220 is required.
The enactment of c. 220 came about as a result of recommendations by the Housing Emergency Action Team (HEAT), a committee of the New Jersey State Assembly which was formed in March 1981 in an attempt to seek solutions to a severe housing shortage in this State. A report issued by HEAT in June 1981 noted that, "Not only is there a housing shortage in terms of sheer volume, there is also a tremendous need for new types of housing in our state." The report made various recommendations to alleviate the housing shortage, including specific recommendations reducing the cost of building homes such as development of reasonable model off-site improvement standards, the exemption of building materials *94 from sales and use taxes, the exemption of unsold newly constructed homes from local property taxes until they are occupied and the encouragement of the establishment of maximum square footage zones in municipalities. The report further stated that:
Unsold housing units should not be taxed as real property. These housing units place no burden on the municipality yet they are taxed as real property. This unfair taxation leads to increased housing prices with no commensurate increase in the value of the home.
HEAT recommends that only the land upon which unsold and unoccupied housing units are located be taxed. This would be most important to maintaining housing prices during periods of extreme market fluctuations when housing inventory could remain unsold for extended periods of time. [at 19]
Following the release of the HEAT report Assembly Bill 855 (1982) was introduced in the General Assembly which bill was amended by the Assembly Municipal Government Committee at the sponsor's request "to grant the tax exemption to all single family dwellings, not just detached structures." As amended the bill passed both houses but was conditionally vetoed for reasons not pertinent here.
Assembly Bill 855 (1982) was reintroduced incorporating the Governor's suggested changes, and was enacted as L. 1982, c. 220. Upon signing said legislation into law, the Governor's office released the following statement relating to the purpose of c. 220.
A-855, sponsored by Assemblyman John P. Doyle, D-Ocean, exempts newly constructed single family homes from property taxes until a certificate of occupancy is issued and the home is actually being occupied. By exempting the price of the structure, but not the land, from property taxes prior to occupancy, costs to the building which are passed along to the buyer are reduced.
In urging the court to declare that c. 220 is not an exemption statute, plaintiffs stress the fact that the key word "exemption" is employed in neither the title nor body of the act and that it was not codified as part of N.J.S.A. 54:4-3.6 et seq. which defines the procedures for the application and approval of tax exemptions.
*95 Clearly the term exemption does not appear in the title.[2] I note, however, that the term was used in the HEAT report, the Assembly Committee report and the Governor's statement. Additionally the phrase "omit from taxation" is twice employed in the body of the act. Although, in the abstract, there may be technical differences between the words exemption and omit, such differences are meaningless in the context of this matter. No weight is to be accorded to the Legislature's choice of words where the legislative intent is clear.
As correctly pointed out by plaintiffs, c. 220 was codified as part of N.J.S.A. 54:4-23 which directs that all real property shall be assessed and which is but a part of Chapter 4 of Title 54 which overall deals with the assessment and collection of taxes. N.J.S.A. 54:4-1 states:
All property real and personal within the jurisdiction of this state not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter. [Emphasis supplied]
Chapter 220 expressly excludes from taxation and from assessment for taxation certain property for a specific period. The authority to provide for such exclusions is expressly provided for in N.J.S.A. 54:4-1. Chapter 220, as well as the entire legislative history, cannot more clearly express the intent of the Legislature that qualified property not be taxed and it is immaterial whether the property is to be excluded or omitted therefrom. Such property, not being subject to taxation, can only be considered exempt and thus the constitutional mandate that tax exemptions may only be granted by general laws applies.
The test to determine whether a statute is special legislation was stated in Harvey v. Essex Cty. Freeholders Bd., 30 N.J. 381 (1959) as follows:

*96 In deciding whether an act is general or special, it is what is excluded that is the determining factor and not what is included. Budd v. Hancock, 66 N.J.Law 133, 135-136 (Sup.Ct. 1901). If no one is excluded who should be encompassed, the law is general. Another requirement of the general law is that it must affect equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. In Van Riper v. Parsons, 40 N.J.Law 1, 9 (Sup.Ct. 1878) the court pointed out that local and especial laws rest on a false or deficient classification in that `their vice is that they do not embrace all the classes to which they are naturally related; they create preference and establish inequality; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects.' See also City of Passaic v. Consolidated Police, Etc., Pension Fund Commission, 18 N.J. 137, 146, 113 A.2d 22 (1955); Sherwood v. Bergen-Hackensack Etc. Authority, 24 N.J. Misc. 48, 53-54, 46 A.2d 151 (Sup.Ct. 1946), aff'd. 135 N.J.Law 304-306, 51 A.2d 197 (E. & A. 1946). With this distinction between a special and a general law in mind, the question is whether any appropriate person is excluded to which the law, but for its limitations, would apply. Koons v. Board of Commissioners of Atlantic City, 134 N.J.Law 329, 333, 47 A.2d 589 (Sup.Ct. 1946) aff'd. per curiam 135 N.J.Law 204, 50 A.2d 869 (E. & A. 1947); In Re Freygang, 46 N.J. Super. 14, 23, 133 A.2d 672 (App.Div. 1957), aff'd. 25 N.J. 357, 136 A.2d 625 (1957). [30 N.J. at 389]
In Vreeland v. Byrne, 72 N.J. 292 (1977), the method of analyzing such constitutional attacks was succinctly set forth:
Briefly restated, the method of analysis is this: we first discern the purpose and object of the enactment. We then undertake to apply it to the factual situation presented. Finally we decide whether, as so applied, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act. [72 N.J. at 300]
It is clear from the controlling authority that the analysis of purported special legislation does not substantially differ from the analysis of non-invidious classifications under the Equal Protection and Due Process clauses. At the heart of all such cases is the rational relationship between the legislative objectives and the means employed to achieve them. See Bonnet v. State, 155 N.J. Super. 520 (App.Div. 1978), aff'd 78 N.J. 325 (1978), and Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152 (Ch.Div. 1976), aff'd 156 N.J. Super. 513 (App.Div. 1978).
At the outset the quest must be to ascertain the legislative objective in enacting c. 220. In that quest I note that the *97 committee statement appended to Assembly Bill 855 (1982), the forerunner of c. 220, states:
Current law provides that any newly erected structure may be assessed and taxed as real property when it is substantially ready for use. This has created a financial hardship for builders and developers who cannot consummate sales of properties upon which they have constructed new dwellings. In order to alleviate much of this financial hardship to an already depressed building industry, this bill would provide that no detached single family dwelling shall be assessed and taxed as real property unti a certificate of occupancy has been issued and unless the structure is actually occupied and used for residential purposes.
Further clarifying the purported legislative purpose of the bill is the conditional veto of Governor Kean issued on December 6, 1982 which provides in pertinent part:
I support the purpose of this bill and am returning it for technical corrections.
This bill implements one of the recommendations in the Housing Emergency Action Team report, dated June, 1981, and is designed to reduce the cost to build and hence the cost of housing. Since little burden is placed upon municipal services by new unoccupied residential construction, no unfairness results to municipalities and the other taxpayers by a delay in placing this property on the tax rolls.
According to plaintiffs, based on the committee statement, the HEAT report and the Governor's message, the overriding purpose of the bill was to alleviate a financial hardship for builders and developers occasioned by delays in conveying properties on which they have constructed new dwellings, and also to reduce the cost of new housing in this State. Thus, before addressing the question of whether c. 220 constitutes special legislation by excluding from its scope categories of new construction which should have been included, it must be determined whether the classification, in the first instance, is based upon the status of the property owners affected.
It is axiomatic that a classification based upon the status of the owner as opposed to the use of the property is void per se. It was so held in N.J. Turnpike Authority v. Washington Tp., 16 N.J. 38 (1954):
Moreover, tax exemption statutes, if based on the personal status of the owner rather than on the use to which the property is put, run afoul of the tax article of the Constitution of 1947 which provides in part: "Property shall be *98 assessed for taxation under general laws and by uniform rules," Const. Art. VIII, Sec. I, par. 1. [at 44; see also Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 89 (1955)]
Plaintiffs argue that c. 220 is intended to grant tax relief only to builders and developers engaged in the business of constructing single-family homes. As such, according to plaintiffs, it is a violation of the rule laid down in N.J. Turnpike Authority, supra, which condemns as violative of N.J. Const. (1947), Art. VIII, § I, par. 1, tax exemption statutes based upon the personal status of the owner.
In support of their position plaintiffs rely on Koch v. Essex Cty. Bd. of Taxation, 97 N.J.L. 61 (Sup.Ct. 1921),[3] which declared unconstitutional L. 1920, p. 1068 which exempted for a period of five years all improvements to real estate for dwelling purposes erected between October 1, 1920 and October 1, 1922 because the exemption as referred to in the preamble to the act was based upon the status of the owner and not the use of the property:
The reason stated in the preamble that the object of the act was to induce the investment of funds in the building of dwelling houses does not relate to the use but rather to the status of the person making the investment, and, clearly, classified exemption based upon the status of the owner has no constitutional authority. [Id. 97 N.J.L. at 65]
Plaintiffs contend that to presume that builders and developers would pass along to consumers the tax savings is to engage in a fiction. That being the case no one, other than the builders and developers, would benefit from this legislation. However other than this observation by plaintiffs there is nothing in the record to support such a conclusion. I cannot conclude that this legislation was enacted solely for the benefit of private interests and that it has no observable public purpose. Similar arguments were made and rejected in Grand Union Co. v. Sills, 43 N.J. 390 (1964) (statute limiting retail liquor licenses to two persons which was beneficial to the liquor industry); Reingold v. Harper, 6 N.J. 182 (1951) (statute forbidding retail gas *99 dealers from operating stations on a self-service basis to the benefit of competitors of self-service stations); Two Guys From Harrison, Inc. v. Furman, 32 N.J. 199 (1960) (Sunday sales legislation which benefitted a particular group); Gundaker Central Motors v. Gassert, 23 N.J. 71 (1956) (statute provided for closing of automobile dealers on Sunday allegedly resulting from an alliance between the Legislature and the Automotive Trade Association).
The statements from the legislative and HEAT committees and of the Governor cannot be read out of context. From all such reports and from the actual legislation itself emerges the common thread that any aid which may redound to the benefit of the building industry was but only one step in attempting to achieve the overall objective of coping with a critical housing shortage.
It is true that if the overriding purpose of the legislation is to serve private interests disguised under the cloak of the public good it is a perversion, an abuse of power and therefore unlawful. Reingold v. Harper, supra 6 N.J. at 192. Such is not the case here and the fact that c. 220 may have been supported, or perhaps even sponsored, by builders and developers whose interests coincide with the public interest as determined by the Legislature does not impair its validity. As was observed in Hudson County News Co. v. Sills, 41 N.J. 220 (1963) the court does not sit as a superlegislature nor should it concern itself with the wisdom or policy underlying the statute. Its only function is to determine whether the Legislature, by its passage of c. 220, exceeded the broad limits of its constitutional power. We thus turn to the question of whether the Legislature exceeded that power by enacting a special exemption law.
In considering that issue it is important to stress certain well-established principles which govern any constitutional challenge to legislation. It is clear that every possible presumption favors the validity of an act of the Legislature. New Jersey Sports and Exposition Authority v. McCrane, 61 N.J. 1, 8 (1972), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d *100 215 (1972); Holster v. Bd. of Trustees of Passaic Cty. College, 59 N.J. 60, 66 (1971). The burden therefore of proving that a statute is unconstitutional is upon the attacking party. Jamouneau v. Harner, 16 N.J. 500, 515 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955).
While they do not argue that the singling out of residential construction from all newly constructed improvements to real estate constitutes special legislation, plaintiffs do contend that the selection of the narrow category of single-family residential dwellings out of the generic class of all residential improvements, renders the act unconstitutional. Plaintiffs contend that the omission from the classification of residential dwellings having two or more units as well as multi-family high density dwellings, represents a distinction that is devoid of any rational relationship to the purported purpose of the act. As such, according to plaintiffs, by omitting from the class other residential housing units which, in order to accomplish the objective of the legislation should have been included, the act contravenes the constitutional requirement that tax exemptions can only be enacted by general laws.
Plaintiffs greatly stress the importance of Koch v. Essex Cty. Bd. of Taxation, supra, in support of their position. In Koch, as previously noted, the statute under attack provided that, for a period of five years, no tax was to be levied against any improvements to real estate for dwelling purposes erected between October 1, 1920 and October 1, 1922. While initially that case may appear to be factually distinguishable in that the act involved a five year exemption for dwellings constructed within a given two year period, whereas c. 220 has only a beginning point but no termination date and provides for a maximum two year exemption, I find that the rationale employed by the court in declaring the law unconstitutional is applicable here. In striking down the act the court stated:
[T]he difficulty with the situation is that the statute does not exempt all buildings erected for dwelling purposes but such buildings as may be erected within the given period, so that a building completed on the last day of September, 1920, although erected for dwelling purposes, would not be exempted, *101 while another dwelling finished on the last day of September, 1922, would be exempted from the payment of taxes for the balance of the five years provided by the statute. We think this classification is arbitrary and amounts to special legislation in violation of the constitutional prohibition. It would hardly be argued that the legislature could lawfully segregate for the purpose of taxation at a higher rate all dwellings erected within the prescribed period, because for such buildings, being necessary for housing purposes, a higher rent could be obtained, for manifestly, such classification would be arbitrary. The established rule in this state in classifying property for the purpose of taxation is that each classification must contain all the property which is in the same class, and that is largely determined by its use, but in this case the classification is based upon construction, within a limited period, for use for dwelling purposes, while all other buildings used for such purposes are not within the class. [97 N.J.L. at 64]
Thus, while it may appear that it was the restrictive time period which led to the decision, it is clear that the rationale was based on the fact that the classification did not include all other buildings used for such purposes. That such was the case is made clear by the court's reliance on Central Railroad Co. v. State Bd. of Assessors, 75 N.J.L. 771 (E. & A. 1907) where, in declaring unconstitutional a law that differentiated in taxing properties used for canal and railroad purposes the court said:
[P]roperty used for railroad or canal purposes constitutes a class for taxation by reason of its use, and that a tax law which is operative upon the whole mass of the property so used is a general law. Bearing in mind the oft repeated declaration of this court that a law, to be general, must operate equally upon all of a group of objects which, having regard to the purpose of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves, and also remembering that the characteristic which constitutes property used for railroad or canal purposes a class for the purpose of taxation is the use to which it is put, it seems impossible to resist the conclusion that a law which does not embrace in its operation all property so used is special, not general, legislation. The present law, with the supplement of May 18th, 1906, incorporated into it, does, it is true, profess to deal with all property used for railroad or canal purposes. It does not, however, do so in fact. It divides such property into four parcels, and then creates a scheme for the independent taxation, for state purposes, of three of those parcels and leaves the fourth to be taxed under the General Tax law of the state, for the benefit of the several taxing districts in which it is located. [75 N.J.L. at 786; emphasis in original]
Although the Koch and Central Railroad decisions were handed down decades ago the holdings therein remain viable and I have found no authority, nor has any been cited to me, that defeats or detracts from their rationale.
*102 Defendant argues that by excluding all but single-family residential dwellings from c. 220 the Legislature intended to eliminate from consideration those residential properties which are owned by investors, i.e., income producing properties. Defendant claims that the exclusion of all types of residential properties from the exemption except those intended for use as single-family dwellings represents a reasonable classification and has a rational basis. The logic of this conclusion escapes me. If it is presumed that builders and developers of one-family dwellings will pass on to their purchasers the tax savings intended by the Legislature, can it not also be presumed that the builder, owner, investor of rental structures will likewise pass on the tax savings to the tenants?
As noted earlier the overriding purpose of the legislation is to reduce the cost of housing in order to encourage more building and thereby alleviate a critical housing shortage. Just as clear is that the legislation applies to all single-family dwellings and not just to detached single-family structures. As such, included in that classification, in addition to the typical one-family residence, are attached townhouses and/or row houses with common walls and condominium units which, although they may be situated in highrise multi-family structures, are nevertheless single-family owned units.[4]
Clearly included also is the structure commonly known as a duplex, a two-family dwelling having separate units each in separate ownership. Not included however is the typical two-family dwelling with one housing unit located above the other and the entire dwelling being owned by one party even though that party may reside therein.
A literal application of the legislative language would exclude any dwelling, even single-family dwellings, not having a footing. *103 It would thus appear that many, if not all, mobile homes, even though they are in single-family ownership and despite the fact that many such mobile home parks are emerging throughout the state in response to the Mount Laurel decision[5] which has for its purpose, among other things, alleviation of the housing shortage, are excluded from the class.[6]
Additional exclusions seemingly would include those residential structures known as cooperatives where the units, although constructed as and intended for occupancy as single-family residences, will not be held in single-family ownership. The eventual occupants of cooperatives will be shareholders in the cooperative corporation who have a proprietary lease entitling them to occupancy and possession of a particular unit. Thus, while in all other respects, a cooperative and condominium unit may be identical, on the basis of the differences in the form of ownership the former is excluded from the exemption while the latter is included.
Of course, that class of buildings which is constructed exclusively for occupancy by tenants, is also excluded from the c. 220 exemption. Although rental buildings may be identical in virtually all respects to the multi-occupied condominiums and although they also serve to alleviate the housing shortage by making housing available to those who cannot afford to purchase, they are nevertheless excluded from the class.
Allowing, as I must, the benefit of every inference to defendant's position, I nevertheless find no rational relationship between the objects of the legislation, i.e., to alleviate the housing shortage, and the restriction of the tax exemption to a specific *104 class, i.e., one-family owned residential dwellings. While the construction of such dwellings does advance the legislative objective it can be as forcefully argued that the construction of two-, three- or more-family homes in single ownership, mobile homes, cooperative structures and rental complexes accomplishes that same purpose. Thus, in order to accomplish the legislative objective the classification should not be so severely restricted. It excludes from the favored class other forms of new residential construction which should be included. The vice in the single-family home classification is that it creates an inequality, a preference; it favors a portion of a class on the basis of the form of ownership in which the property is held; it excludes from the favored class other properties which are similar and perhaps identical to the one-family group in all respects and which, but for the statutory preference, would be naturally included in the class; all in derogation of the legislative objective.
In view of the foregoing I find that c. 220 is special legislation in violation of Art. VIII, § 1, par. 2 of the New Jersey Constitution. Summary judgment will be entered in favor of plaintiffs. An appropriate order will be submitted.
NOTES
[1] The complaints of the Association of Municipal Assessors of New Jersey and Carolyn H. Landi, assessor of the Township of Wyckoff as representative of a class of assessors in the State of New Jersey, were previously dismissed for lack of standing.

Plaintiffs' request for an order to all county boards and assessors permanently enjoining the implementation of c. 220 is not only redundant but is rendered moot by the decision herein, as are their demands for an order construing c. 220 so as to render taxable all single family buildings or structures partially or totally completed prior to December 29, 1982 and an order to all county boards and assessors enjoining application of c. 220 to single-family buildings or structures partially or totally completed prior to December 29, 1982. Chapter 155 clearly makes the act applicable to construction commenced subsequent to December 29, 1982.
[2] An Act Concerning The Assessment of Real Property and Improvements Thereto and Supplementing Chapter 4 of Title 54 of the Revised Statutes. L. 1982, c. 220.
[3] The Koch decision was affirmed by the Court of Errors & Appeals in Braunstein v. Jersey City, 98 N.J.L. 478 (E. & A. 1922).
[4] The court notes that it is not unusual for an investor to purchase several, perhaps many, condominium units and to hold them for resale. Quare, because the owner is an investor are these units excluded from the exempt class? In view of the decision herein that question need not now be answered.
[5] So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983).
[6] Prior to December 22, 1983, when L. 1983, c. 400 became effective, a moratorium against taxation of mobile homes as real property was in effect. Although c. 400 now provides for the exemption from taxation as real property manufactured (mobile) homes situated in mobile home parks, those homes located on privately owned lots are taxed as real property. To qualify as a park the land must contain no fewer than ten mobile home sites.