204 N.J. Super. 323 (1985)
498 A.2d 1266
THE NEW JERSEY STATE LEAGUE OF MUNICIPALITIES, ET AL., PLAINTIFFS-RESPONDENTS,
v.
IRWIN I. KIMMELMAN, ATTORNEY GENERAL OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1985.
Decided October 2, 1985.
*325 Before Judges ANTELL, SHEBELL and MATTHEWS.
Harry Haushalter, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Harry Haushalter, on the brief and reply brief).
Edward G. Rosenblum argued the cause for respondents (Rosenblum & Rosenblum, attorneys).
The opinion of the court was delivered by SHEBELL, J.A.D.
This is an appeal from the July 12, 1984 judgment of the Law Division declaring that L. 1982, c. 220 as amended by L. 1983, c. 155 (N.J.S.A. 54:4-23a) violates Article VIII of the New Jersey Constitution of 1947. The statute under question generally requires that certain forms of unoccupied, newly constructed, residential structures not be subject to taxation for a specified period of time or until a certificate of occupancy has been issued. Our review of the statute and the applicable case law satisfies us that the decision of the Law Division is in error on that issue and that the enactment is a valid and constitutional exercise of legislative authority.
*326 In addition to alleging that the law is "special legislation" in violation of the N.J. Const. (1947), Art. VIII, § 1, ¶ 2, plaintiffs urge that the enactment is not an "exemption" statute and is subject to the requirements of N.J. Const. (1947), Art. VIII, § 1, ¶ 1(a) which requires that "all property be taxed according to the same standard of value." In the alternative they allege that even if it is an "exemption" statute it would still offend the same constitutional provision because the exemption is based on the personal status of the owner rather than the use to which the property is put. The Law Division properly rejected these arguments, finding (1) that the statute is an exemption statute and (2) that plaintiffs failed to demonstrate that the legislation was enacted solely for the benefit of private interests, since such interests could coincide with the public interest as determined by the Legislature. N.J. State League of Municipalities v. Kimmelman, 197 N.J. Super. 89, 96, 98-99 (Law Div. 1984). We concur with its determination on these two issues for the reasons expressed in its written opinion. Ibid.
Our disagreement with the decision of the Law Division lies with its conclusion that the exemption "excludes from the favored class other forms of new residential construction which should have been included," thereby creating an inequality or preference. Id. at 104.
A statute is presumed to be constitutional and will not be declared void unless it is clearly repugnant to the Constitution. Paul Kimball Hospital v. Brick Township, 86 N.J. 429, 446-47 (1981). The burden is on the party challenging the constitutionality of a statute to demonstrate clearly that it violates a constitutional provision. Piscataway Twp. Bd. of Educ. v. Caffiero, 86 N.J. 308, 318 (1981).
Two provisions of the New Jersey Constitution of 1947 bear on the question before us. Article IV, § VII, ¶ 9 provides:
The Legislature shall not pass any private, special or local laws:
........

*327 (6) relating to taxation or exemption therefrom.
Article VIII, § 1, ¶ 2 provides that:
Exemption from taxation may be granted only by general laws. Until otherwise provided by law all exemptions from taxation validly granted and now in existence shall be continued. Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes, as defined by law, and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit.
In deciding whether an enactment is unconstitutional "special" legislation or constitutional "general" legislation, the determining factor is what is excluded and not what is included. Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 223 (1985). If no one is excluded who should be included, the law is general. Budd v. Hancock, 66 N.J.L. 133, 135 (Sup.Ct. 1901). As stated in Newark Superior Officers Ass'n:
A general law is one that affects equally all of a group who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class themselves. The analysis used to determine whether any appropriate person is excluded to which the law, but for its limitations, would apply is similar to the analysis used to determine whether a person is afforded equal protection under the U.S. Constitution. [98 N.J. at 223]
A statute may stand as general legislation if there is a rational basis justifying the distinction or classification between the included and excluded group, i.e., the classification must be reasonable and not arbitrary. Mahwah Twp. v. Bergen County Bd. of Taxation, 98 N.J. 268, 283 (1985).
A three prong test was developed in Vreeland v. Byrne, 72 N.J. 292 (1977). First, the purpose and object of the legislation must be considered; second, the statute must be applied to the factual situation existing to determine whether any one thing is excluded that should be included; third, it must be determined whether, as so applied, the resulting classification can be said to rest upon a rational or reasonable basis relevant to the purpose and object of the act. Id. at 300-01. In searching for a rational basis for the classification, the court is not limited to the stated purpose of the legislation, but should *328 seek any conceivable rational basis. McKenney v. Byrne, 82 N.J. 304, 314-16 (1980).
The law under examination, in its final version, reads as follows:
Any other law to the contrary notwithstanding, no building or other structure newly constructed on any parcel of real property and intended for occupancy and use for residential purposes as a single family dwelling shall be added to the assessment list as real property subject to taxation, until a certificate of occupancy or temporary certificate of occupancy has been issued and unless the building or other structure is actually occupied and used for such purposes; provided, however, that such building or structure shall be omitted from taxation for a period not to exceed 24 months. At the termination of the 24 month period or following the granting of a certificate of occupancy or temporary certificate of occupancy and the occupation and use of the building for residential purposes, the building or structure shall be assessed and taxed as of the first day of the month following the date of such use for the proportionate part of said year then remaining.
For the purposes of this act, "newly constructed" refers to construction which commenced on or after December 29, 1982. Construction shall be deemed to commence on the date of the footing inspection. Nothing in this act shall be construed as applicable to any addition to, or improvement or alteration of, any existing building or structure. [N.J.S.A. 54:4-23a]
With the background of the three general principles of Newark Superior Officers Ass'n and Mahwah Township, we apply the Vreeland test to the statute in question. The purpose and object of the legislation is unquestioned. Governor Kean in his conditional veto message of December 6, 1982 stated:

This bill implements one of the recommendations in the Housing Emergency Action Team report,[1] dated June, 1981, and is designed to reduce the cost to build and hence the cost of housing. Since little burden is placed upon municipal services by new unoccupied residential construction, no unfairness results to municipalities and the other taxpayers by a delay in placing this property on the tax rolls. [Emphasis and footnote ours]
The HEAT Report made specific findings documenting the existence of and reasons for a state-wide housing shortage. In *329 recommending that unsold homes be exempted from property taxes the team observed:
Unsold housing units should not be taxed as real property. These housing units place no burden on the municipality yet they are taxed as real property. This unfair taxation leads to increased housing prices with no commensurate increase in the value of the home.
HEAT recommends that only the land upon which unsold and unoccupied housing units are located be taxed. This would be most important to maintaining housing prices during periods of extreme market fluctuations when housing inventory could remain unsold for extended periods of time. [HEAT Report (June 1981), at 19].
Next, we determine what comparable residential units are excluded from the tax exemption. The trial judge read the statute as exempting from assessment single family dwellings, two family dwellings intended to become separately owned units, and condominiums, but not exempting certain mobile homes, cooperatives and rental complexes. However, N.J.S.A. 54:4-23a exempts all buildings and structures which are newly constructed on any parcel of real property and "intended for occupancy and use for residential purposes as a single family dwelling." For the purposes of our analysis under Vreeland, it is sufficient to note that the only form of comparable residential housing that is clearly excluded from the exemption are multi-family rental complexes. Mobile homes eligible to be taxed as real estate, cooperative single-family housing, two-family dwellings with, for instance, one owner occupied and the other rented and the like may arguably be entitled to exemption under the statute. Such questions of entitlement should be decided on a case by case basis with full opportunity for argument on the facts of the particular case to be presented to the appropriate court. It must be recognized that some discriminatory impact and some imperfections in the grouping or categories will not invalidate the classification. McKenney, 82 N.J. at 316.
The final prong of the test under Vreeland is whether "the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and object of the act." *330 72 N.J. at 300-01; Mahwah Twp., 98 N.J. at 283; Newark Superior Officers Ass'n, 98 N.J. at 223. We must focus our attention on the excluded class and not what is included in this evaluation. Newark Superior Officers Ass'n, 98 N.J. at 223. In the reasoning of the trial judge the act failed this third test. He concluded the following:
Allowing, as I must, the benefit of every inference to defendant's position, I nevertheless find no rational relationship between the objects of the legislation, i.e., to alleviate the housing shortage, and the restriction of tax exemption to a specific class, i.e., one-family owned residential dwellings. While the construction of such dwellings does advance the legislative objective it can be as forcefully argued that the construction of two-, three- or more-family homes in single ownership, mobile homes, cooperative structures and rental complexes accomplishes that same purpose. Thus, in order to accomplish the legislative objective the classification should not be so severely restricted. It excludes from the favored class other forms of new residential construction which should be included. The vice in the single-family home classification is that it creates an inequality, a preference; it prefers a portion of a class on the basis of the form of ownership in which the property is held; it excludes from the favored class other properties which are similar and perhaps identical to the one family group in all respects and which, but for the statutory preference, would be naturally included in the class, all in derogation of the legislative objective. [197 N.J. Super. at 103-04].
The Law Division relied principally on Koch v. Essex County Board of Taxation, 97 N.J.L. 61 (Sup.Ct. 1922). The statute challenged in Koch exempted for five years real estate improvements intended for residential purposes and constructed between October 1, 1920 and October 1, 1922. The purpose of the exemption was to spur residential construction which was in shortage due to the lack of such construction during World War I. Id. at 62-63. The Court found it arbitrary to include only housing created within a limited time period, "leaving all other property of like character and for the same use subject to taxation...." 97 N.J.L. at 66. Since Koch the test for "special legislation" has undergone substantial refinement as evidenced by Vreeland, Newark Superior Officers Ass'n, and Mahwah Twp.
As mentioned above, the court is not limited to the stated purpose of the legislation in searching for a rational basis for the enactment of the legislation but should seek any conceivable *331 rational basis. Mahwah Twp., 98 N.J. at 285-86. One conceivable purpose of the legislation is to encourage individual home ownership as a means for providing residential housing. The HEAT report highlighted the fact that developers of dwellings intended for single family ownership faced very different problems than developers of rental complexes. Home ownership was viewed as out of the reach of a large segment of the population because of high building costs and high interest rates. This resulted in a high inventory of homes with the requirement of payment of property taxes during the period when the home was unsold; thus, requiring an even higher sales price.
The report also noted that problems facing construction of multi-family rental housing included procedural delays preventing speedy resolution of landlord-tenant disputes and the reluctance of builders and investors to construct rental units in rent-controlled municipalities. Accordingly, separate recommendations were made to cope with these problems. The Legislature could reasonably have concluded that exempting rental units from property taxes on the same basis as single family dwellings would not significantly help the production of such units and that the resultant cost to the municipalities would not yield a proportionate benefit.
In addition, the Legislature could reasonably conclude that the builder of single family dwellings in selling to the typical buyer faces a different problem than the builder of rental units, i.e., rental units were not seen to remain vacant for a considerable time after completion as were single family dwellings erected for sale in times of high building costs and high interest rates.
The practicalities of the social, political and economic arena dictate that the Legislature be permitted to first "strike at an evil where it finds it without first surveying the entire scene in which it may exist even in equal degree." Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199, 219 (1960). The Legislature *332 may seek to resolve problems one step at a time addressing first that part of the problem that seems most acute. Piscataway Twp. Bd. of Educ. v. Caffiero, 86 N.J. 308, 324 (1981). A court may not act as a super-legislature but instead must uphold legislative action where, as here, there is a rational basis for the excluding of the category. Mahwah Twp., 98 N.J. at 292.
In light of the strong presumption of validity of the Legislature's enactment and our analysis reflecting that there is a rational basis to support the exclusion of residential rental units, we conclude that the plaintiffs have failed to carry the burden of clearly demonstrating a violation of the constitutional provision in question. We hold that the legislation does not constitute "special legislation."
The judgment of the Law Division is reversed.
NOTES
[1] The Housing Emergency Action Team, hereafter referred to as HEAT, was named in March, 1981. It was constituted of 12 members of the Assembly, appointed by the Assembly minority leader, to study possible methods of alleviating New Jersey's shortage of residential housing.